UNITED STATES of America, Plaintiff–Appellant,

v.

James Russell CROOK, Defendant– Appellee.

No. 92–10404.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1993.

Decided Nov. 23, 1993.

---

Samuel Wong, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellant.

Charles M. Bonneau, Sacramento, CA, for defendant-appellee.

Before: REINHARDT, TROTT and RYMER, Circuit Judges.

RYMER, Circuit Judge:

The United States appeals the district court's downward departure in sentencing James Russell Crook after a plea of guilty to manufacturing 751 marijuana plants, in violation of 21 U.S.C. § 841(a)(1). The district court departed one level based on its finding that Crook believed he was growing the plants for personal use, and one level because Crook lost his family home in civil forfeiture proceedings. We have jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291, and we hold that the district court incorrectly relied on forfeiture as a ground for departure and clearly erred in finding that Crook manufactured more than 700 marijuana plants for

personal use. Accordingly, we vacate Crook's sentence and remand for resentencing.

I

On April 16, 1991, drug enforcement agents searched Crook's house in Orangevale, California pursuant to a search warrant and found 388 marijuana seedlings in a locked room in the garage. The search also disclosed plant cultivation paraphernalia, a plastic bag sealing machine, and a map of the Sacramento River Delta. Edwin Ervin, Crook's stepson, was there at the time and escorted the agents to a wetlands site near the Sacramento River, where they found 363 marijuana plants approximately 18–24 inches tall growing in paint buckets on makeshift barges. Both Ervin and Crook's wife, Barbara, said that Crook had been cultivating marijuana. Crook voluntarily surrendered on April 16, 1991, and told the agents that he was growing marijuana for his personal use.

On May 3, 1991, Crook and Ervin were indicted on one count of conspiracy to manufacture marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of manufacture of marijuana plants, 21 U.S.C. § 841(a)(1). Crook pled guilty to the manufacturing count on September 11, 1991.[1] The government agreed to move for dismissal of the conspiracy count and to recommend an adjustment for acceptance of responsibility and a sentence at the bottom end of the guidelines range. With the adjustment for acceptance of responsibility, Crook's total offense level was 28, resulting in a guidelines range of 78–97 months at Criminal History Category I.

In his sentencing memorandum, Crook argued for a downward departure because of the civil forfeiture of his house,[2] because he manufactured the marijuana for personal use, and because of the likelihood of his successful drug rehabilitation. He claimed that he could not afford to support his drug habit through purchases, so he had manufactured the 751 marijuana plants for personal use. Crook also told the probation officer that he smoked approximately seven grams of marijuana per day.[3]

The parties stipulated that the government had no evidence of marijuana sales by Crook, that no items commonly associated with sales of marijuana (such as scales, ledgers, or pagers) were located during the search of Crook's house, and that no evidence of substantial wealth was located during searches of Crook's house and bank accounts. The parties further stipulated that average marijuana production is less than 273 grams per plant and that using a figure of 273 grams per plant, Crook's 751 plants would have yielded 450 pounds of marijuana, including 225 pounds of high-quality female marijuana, with a wholesale value of between $382,000 and $1,125,000. At a sentencing hearing on April 15, 1992, the district court expressed doubt that Crook was growing the large quantity of marijuana which was seized for personal use.

Crook then volunteered to have a polygraph taken on the question of personal use. The court continued the hearing so that it could consider the results of that examination. The polygraph examiner concluded that Crook was not truthful when he stated that he did not intend to sell the marijuana. At the continued sentencing hearing, however, the district court decided to accord no weight to the polygraph results on the footing that such evidence is not "sufficiently reliable."

In his allocution, Crook indicated he was trying to grow enough marijuana to last a long time. The government, in turn, proffered the testimony of a DEA agent who heard Ervin say in a postarrest interview that Crook told Ervin that he had big plans for making money with the marijuana crop. The district court declined to consider this statement.

---

1. The charges against Ervin were dismissed on May 6, 1992, at the time of Crook's sentencing.

2. Crook's house, in which he had approximately $75,000 in equity, was forfeited pursuant to 21 U.S.C. § 881.

3. This amounts to between five and six pounds of marijuana per year.

The district court found that Crook had grown the marijuana for his personal use, and that the Sentencing Guidelines do not adequately take into consideration the fact that an individual may believe that he manufactured 751 plants for personal consumption. It based a one-level downward departure on this finding. The court also found that Crook's house did not constitute proceeds from drug sales, and that the Guidelines do not take into account that a defendant could lose his home through forfeiture. It departed another level for loss of the home, resulting in a total offense level of 26 and a guidelines range of 63–78 months.[4] The district court sentenced Crook to 66 months because

> the quantity involved here may not justify a sentence of simply the minimum mandatory, and that I . . . also [found] . . . that although the drug was grown for Mr. Crook's personal use, that had he been successful, it probably would have been distributed to other people.

This timely appeal followed.

## II

■ We review the district court's interpretation of the Sentencing Guidelines de novo. *United States v. Blaize*, 959 F.2d 850, 851 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2954, 119 L.Ed.2d 576 (1992). Departures from the Sentencing Guidelines are reviewed under the three step approach of *United States v. Lira–Barraza*, 941 F.2d 745 (9th Cir.1991) (en banc). First, the district court must have legal authority to depart from the Guidelines. *See id.* at 746. Downward departures are permitted "if the court finds 'that there exists [a] . . . mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. . . .' " U.S.S.G. § 5K2.0 (*quoting* 18 U.S.C. § 3553(b)); *see also United States v. Valdez–Gonzalez*, 957 F.2d 643, 647 (9th Cir.1992) (citing *Lira–Barraza*). Second, the factual findings on which the district court relied in departing are reviewed for clear error. *See Lira–Barraza*, 941 F.2d at

746–47. Third, the district court's departure must not be "unreasonable" within the meaning of 18 U.S.C. § 3742(e)(3) and (f)(2). *See id.* at 747.[5]

## III

■ The government argues that the Sentencing Guidelines do not permit civil forfeiture to serve as the basis for a downward departure because the Sentencing Commission adequately considered the possibility of forfeiture and determined that it was distinct from any other penalty. Guidelines § 5E1.4 specifically states: "Forfeiture is to be imposed upon a convicted defendant as provided by statute." Based on this reasoning, the Third Circuit recently held that a court may not rely on exposure to civil forfeiture as a ground for downward departure. *See United States v. Shirk*, 981 F.2d 1382, 1397 (3d Cir.1992), *petition for cert. filed*, 61 U.S.L.W. 3805 (U.S. May 17, 1993) (No. 92–1841). The government urges us to follow suit.

Crook, on the other hand, contends that loss of a defendant's home, and forfeiture of property which was not acquired with proceeds of illicit activity, are unusual circumstances not contemplated by the Commission. Crook also suggests that if the district court had refused to consider downward departure on these grounds, it would have erred under *United States v. Sanchez*, 927 F.2d 1092 (9th Cir.1991) (per curiam).

In *Sanchez*, the defendant had entered into a plea agreement reserving his right to argue that, based upon a forfeiture of most of his property, he provided substantial assistance to the government such that he was eligible for a reduction in his guidelines sentence. He also argued at sentencing that the district court should depart downward because the Guidelines do not adequately take civil forfeitures into account. On appeal, Sanchez argued that the district court erroneously concluded it lacked discretion to depart downward. We held that the court correctly concluded that assistance provided in a civil

---

4. The district court rejected a departure based on likelihood of drug rehabilitation. There is no appeal from this decision.

5. The government does not challenge the reasonableness of the district court's downward departures.

forfeiture proceeding is not "substantial assistance" within the meaning of § 5K1.1, but we found no indication in the record that the sentencing judge believed a downward departure under § 5K2.0 was impermissible. *Id.* at 1093–94. Accordingly, we had no occasion in *Sanchez* to reach the issue before us in this case.

We now join the Third Circuit in holding that the Guidelines do not allow for departure on account of a civil forfeiture. As the court explained in *Shirk*:

It is apparent from [§ 5E1.4], which has been in existence since the Guidelines' inception in November 1987, that the Commission considered forfeiture when creating the guideline ranges for terms of imprisonment.... We interpret the Guidelines' straightforward mandate that "forfeiture is to be imposed ... as provided by statute" to mean that the Commission viewed monetary forfeiture as entirely distinct from the issue of imprisonment.

981 F.2d at 1397.

■ We are reinforced in this view by U.S.S.G. §§ 5E1.2(d)(4) and (5), which provide that "[i]n determining the amount of [a] fine, the court shall consider ... (4) any restitution or reparation that the defendant has made or is obligated to make; [and] (5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct...." There is no similar provision in the Guidelines making forfeiture a proper consideration in determining the length of incarceration. By considering forfeiture in § 5E1.4 but not providing that forfeiture may be considered in setting a term of incarceration, the Commission indicated that forfeiture and incarceration are to be considered separately. Indeed, while it makes sense to base a monetary fine in part on a defendant's ability to pay (and in turn, on the extent of other financial resources and obligations), there is no corresponding relationship between assets subject to forfeiture (which are deemed to be owned by the United States as of the time used to commit a crime, 21 U.S.C. § 881(h)), and incarceration.[6]

■ We are not persuaded by Crook's argument that an extraordinary forfeiture, like extraordinary restitution, *see United States v. Condelee,* 961 F.2d 1351 (8th Cir.1992), should be a ground for departure. We recently held in *United States v. Miller,* 991 F.2d 552 (9th Cir.1993), that extraordinary restitution is a basis for downward departure only "to the extent it shows acceptance of responsibility." *Id.* at 553. Unlike extraordinary restitution, civil forfeiture is not a voluntary act which demonstrates acceptance of responsibility. Restitution is not, therefore, a viable analogy.

■ Nor are we persuaded by Crook's suggestion that, even if the Commission has taken collateral monetary loss into consideration, it has not considered loss of a family home that was honestly acquired. We acknowledge that the loss of their home will have worked a hardship upon Crook's family; this is not, however, a proper consideration in determining a sentence under the Guidelines. *Cf.* U.S.S.G. § 5H1.6 ("Family ties and responsibilities ... are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."). Crook's family was aware that he was cultivating marijuana on their land, and there is no question that use of property for an illegal enterprise makes it forfeitable

---

6. Our conclusion is in accord with the Supreme Court's recent decision in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The Court held in *Austin* that forfeiture is a form of punishment which is subject to the limitations of the Excessive Fines Clause of the Eighth Amendment. *Id.* at ——, 113 S.Ct. at 2812. However, the fact that a given offense may result in several types of punishment which are subject to constitutional limitations does not restrict the power of Congress to provide, within constitutional boundaries, how the various types of punishment are to be imposed.

A "sentence" under the Guidelines covers imprisonment, fines, and probation. 18 U.S.C. § 3551(b). The fact that another form of punishment (such as forfeiture) has been imposed does not disturb the statutory mandate of eliminating sentence disparity. *See* 18 U.S.C. § 3553(a)(6). In fact, Congress has specifically provided that a "sanction authorized by section 3554 [forfeiture], 3555 [notice to victims], or 3556 [restitution] may be imposed in addition to the sentence" of imprisonment, fine, or probation. 18 U.S.C. § 3551(b).

whether or not it was acquired with funds from an illegal source.

Thus, we conclude that the district court's departure because Crook's home had been civilly forfeited was impermissible.[7]

## IV

The government argues that a defendant's intent to manufacture marijuana only for personal use is not a permissible basis for downward departure, and that the court clearly erred in finding Crook manufactured 751 plants for personal use and not for distribution. Because we agree that Crook's manufacturing efforts were too great to be undertaken for his own consumption, we do not need to decide whether a departure may ever be founded on the manufacture of marijuana for personal use.

Factual findings at sentencing are reviewed for clear error. *United States v. Chapnick,* 963 F.2d 224, 226 (9th Cir.1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Crook stated to the probation officer that he smoked approximately seven grams of marijuana per day, or less than six pounds of marijuana per year. Assuming that half of his marijuana crop died, that he threw away all of the male plants, and that the yield per plant was half of the stipulated quantity, Crook would still have produced over sixty pounds of marijuana: more than five times what he could personally consume in two years.[8]

Even according no weight to Crook's failed polygraph test or to Ervin's alleged statement that Crook planned to profit from his marijuana crop, and recognizing that the district court was in a superior position to assess Crook's credibility, we are convinced by the size of Crook's marijuana crop that he must have been manufacturing marijuana, at least in part, for sale or distribution. As the district court recognized, "had [Crook] been successful, [the marijuana] probably would have been distributed to other people." We are thus "left with the definite and firm conviction" that this must have been Crook's intention from the outset.

## V

We conclude that civil forfeiture is not a proper basis for downward departure under the Sentencing Guidelines and that the district court's conclusion that Crook was manufacturing marijuana for personal use is clearly erroneous. Therefore, we vacate Crook's sentence and remand for resentencing within the guidelines range for offense level 28.

**VACATED and REMANDED.**

---

7. We do not decide whether the circumstances of a forfeiture in combination with other specific offender characteristics, such as an extraordinary imposition on family ties and responsibilities and community ties under § 5H1.6, may warrant a downward departure. Because we conclude that downward departure based upon civil forfeiture is not permissible under the Sentencing Guidelines, we also do not reach the government's additional arguments that a downward departure on this ground is also barred by 21 U.S.C. § 847 and the Equal Protection Clause of the Constitution.

8. The district court assumed at sentencing that marijuana has a maximum two-year shelf life.

At one point during sentencing, Crook estimated that he might have smoked a maximum of ten grams of marijuana per day. Even this larger quantity would amount to only eight pounds per year. At this rate of consumption, Crook would still have manufactured about four times the amount he could personally consume in two years.