**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Leon E. HENDRICKSON,**
**Defendant–Appellee.**

No. 93–2981.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1994.

Decided April 20, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 18, 1994.

---

171

James M. Warden, Asst. U.S. Atty., Donna Eide (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellant.

Thomas W. Farlow (argued), Robert W. Wright, Michael J. Rusnak, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendant-appellee.

Before EASTERBROOK and MANION, Circuit Judges, and McDADE, District Judge.*

McDADE, District Judge.

■ Appellant, the United States of America ("the government"), appeals from the sentence imposed upon Appellee, Leon Hendrickson ("Hendrickson"), by the district

* Hon. Joe Billy McDade of the Central District of Illinois, sitting by designation.

court pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines").[1] Hendrickson entered into a plea agreement with the government and pled guilty to eight counts of money laundering, 18 U.S.C. § 1957, and eight counts of criminal forfeiture, 18 U.S.C. § 982. Although the Guidelines dictated that Hendrickson be sentenced to between twenty-seven and thirty-three months in prison, pursuant to U.S.S.G. § 5K2.0 the district court made a downward departure of six levels from the guideline range and sentenced Hendrickson to five months' imprisonment, five months' home detention, and two years' probation. The district court's downward departure was based upon the finding that Hendrickson demonstrated "extraordinary acceptance of responsibility." The district court's finding of extraordinary acceptance of responsibility was, in turn, based upon Hendrickson's payment immediately prior to his being sentenced of the entire $742,555 mandatory forfeiture he owed pursuant to the plea agreement. The government appeals the sentence imposed contending that the district court erred as a matter of law when it held that the payment of a statutory forfeiture can be a basis for a finding of extraordinary acceptance of responsibility. We agree. Therefore, Hendrickson's sentence is vacated, and this matter is remanded to the district court for resentencing.

## I. Background

Hendrickson owns and operates Silver Towne, a precious metals and coin dealership, in Winchester, Indiana. Silver Towne is one of the largest coin dealerships in the nation and a leader in gold bullion sales. Hendrickson often attended trade shows as part of his business. At one such trade show, Hendrickson met a man named Robert McGuinn who purported to be a coin dealer. McGuinn purchased from Hendrickson approximately $50,000 worth of gold for which McGuinn tendered cash. The cash was delivered to Hendrickson in a brown paper bag. This sale was the first of approximately eleven transactions which would occur between Silver Towne and McGuinn over the course of three months in early 1990. The transactions totaled approximately $1,094,745 consisting of eleven cash payments varying in size between $28,000 and $140,000. Often times, the cash shipments from McGuinn would arrive at Silver Towne in pails lined with garbage bags and would consist of currency of small denominations. Neither Hendrickson nor any Silver Towne employee filed the Internal Revenue Service ("IRS") Form 8300 as required by I.R.C. § 6050I (1986) for these cash transactions.

An IRS audit and investigation of Silver Towne in November 1990 revealed Silver Towne's failure to file the required Forms 8300 for the cash transactions involving McGuinn. In addition, as one might have suspected, it was later discovered that McGuinn was actually an agent for an international money laundering operation linked to a Colombian cocaine cartel.[2] Hendrickson was charged with eight counts of money laundering in violation of 18 U.S.C. § 1957 and eight counts of criminal forfeiture pursuant to 18 U.S.C. § 982. Subsequently, Hendrickson filed a petition to enter a plea of guilty, and the parties filed a memorandum of plea agreement. As part of the plea agreement, Hendrickson was required to pay a mandatory forfeiture of $742,555 pursuant to the provisions of 18 U.S.C. § 982. Following a hearing regarding Hendrickson's guilty plea and the plea agreement, the district court adjudged Hendrickson guilty.

1. The United States is authorized to appeal this matter pursuant to 18 U.S.C. § 3742(b). Appellee, however, contends that this Court lacks jurisdiction over this appeal because the government has not demonstrated that it received approval to appeal from the Attorney General, Solicitor General, or a designated deputy solicitor general as required by 18 U.S.C. § 3742(b). Appellee's contention is without merit. The approval requirement contained in 18 U.S.C. § 3742(b) is not a jurisdictional requirement. *United States v. Gonzalez*, 970 F.2d 1095, 1102 (2nd Cir.1992); *United States v. Hall*, 943 F.2d 39, 41 (11th Cir.1991); *United States v. Smith*, 910 F.2d 326, 328 (6th Cir.1990). Accordingly, this Court would not be divested of jurisdiction in this case even if the government failed to secure approval for its appeal as required by 18 U.S.C. § 3742(b).

2. The government concedes that Hendrickson was not aware that the money used to pay for the gold was derived from the drug trade.

A sentencing hearing for Hendrickson was convened by the district court. Just prior to the time the hearing was ·convened, Hendrickson tendered payment of the entire amount of the forfeiture. At the hearing, the district court adopted the findings of the presentence investigation report and, based upon an offense level of 18 and a criminal history category of I, found that the applicable guideline range for incarceration was twenty-seven to thirty-three months. However, in response to a motion by Hendrickson, the district court made a downward departure from the applicable guideline range based upon "extraordinary acceptance of responsibility as shown by the forfeiture of $742,555." The district court considered statutory forfeiture, unlike restitution where an offender is divested of property as a means of repayment to a victim, to be a genre of divestment which "is a payment that you have made basically to rectify the law that you committed [sic]." In making that distinction, the district court was aware that Hendrickson had not retained any of the proceeds of the money laundering transactions and that Hendrickson and Silver Towne had made only a profit of approximately $10,000 on the entire deal.

For the above reasons, the district court decided that the forfeiture was "extremely punitive and burdensome," and was "a matter that has not been adequately taken into account and could not have been adequately considered by the sentencing commission in formulating the guidelines." The district court reasoned that constructing the guideline ranges on the basis of the amount of money laundered without regard to the actual profit for the criminal exaggerates the harm. The district court found the Hendrickson's payment of the forfeiture in light of this exaggeration "truly extraordinary" particularly since Hendrickson "voluntarily" made immediate payment of the entire $742,555 which required him to liquidate some of his assets. In addition, the district court noted the impact of such a large forfeiture upon both Hendrickson and Silver Towne, a

business Hendrickson had spent a "lifetime" building. In the district court's view, extraordinary acceptance of responsibility was also implicated by the fact that Hendrickson had not challenged or otherwise contested the indictment which involved a relatively new offense with limited public awareness and compliance. Accordingly, the district court· made a downward departure of six levels from the applicable guideline range and sentenced Hendrickson to five months' incarceration, five months' home .detention, and two years' supervised release.

## II. Analysis

Initially, Hendrickson argues that the government's appeal should be dismissed and this case remanded to the district court for a determination of whether the government's appeal constitutes a breach of the terms of the plea agreement entered into between Hendrickson and the government.[3] The bases for Hendrickson's argument are the doctrines of waiver and estoppel. Hendrickson contends that the language of the plea agreement waives the government's right to appeal the sentence imposed in this case and that it would be "patently unfair" to enforce a waiver of the right to appeal against Hendrickson but not against the government. Hendrickson's contentions are without merit.

 Hendrickson maintains that paragraphs five and seven of the plea agreement demonstrate that the government and Hendrickson intended to waive their respective rights to appeal the sentence imposed by the district court. Paragraphs five and seven state, in pertinent part:

5. The parties recognize that the Court may decide to depart from the Sentencing Guidelines pursuant to 18 U.S.C. § 3553(b) in which event the Defendant is still bound by his plea of guilty and neither party may withdraw from this plea agreement.

7. At sentencing, the Defendant is free to request any sentence he desires, including a request for a downward departure

---

**3.** It is interesting to note that, although Hendrickson argued in his brief that this appeal must be dismissed because the government failed to demonstrate that it received the statutorily re-

quired approval for its appeal, he steadfastly maintained at oral argument that no approval was required for an effective waiver of the government's right to appeal.

from the Sentencing Guideline determined by the Court.

■ The language contained in these paragraphs cannot properly be construed as a waiver of the right to appeal the sentence imposed by the district court. The waiver of the right to appeal must be express and unambiguous. *See United States v. Wiggins,* 905 F.2d 51 (4th Cir.1990). No clearly expressed intent to waive the right to appeal can be found in any provision of the plea agreement. The language cited by Hendrickson in paragraphs five and seven simply stands for the proposition that Hendrickson was free to seek a departure from the guideline range and neither party could withdraw from the plea agreement on the basis of the sentence imposed. As such, the express language of the plea agreement does not demonstrate an intent by either Hendrickson or the government to waive their right to appeal the sentence imposed by the district court.

Hendrickson also argues that it was his understanding, given the circumstances surrounding the negotiation of the plea agreement, that both he and the government waived their rights to appeal the sentence imposed by the district court. This contention is directly contradicted by Hendrickson's own statements made at his change of plea hearing. First, on two occasions during the hearing, Hendrickson answered in the affirmative when asked by the district court if the plea agreement embodied the entire agreement between the government and himself. As we have already stated, nothing in the plea agreement could properly be construed as a waiver of the right to appeal by either the government or Hendrickson. Second, and most damning to Hendrickson's argument, the following discussion took place at the hearing:

4. Had Hendrickson actually waived his appeal rights, his argument that the government also lost its appeal rights would find some level of support from cases decided in the Fourth Circuit. In *United States v. Guevara,* 941 F.2d 1299 (4th Cir.1991), the Fourth Circuit held that when a defendant waives his right to appeal a sentence pursuant to a plea agreement, the government also will be found to have waived its right to appeal a sentence. The Fourth Circuit found this to be true even if the plea agreement contains an explicit waiver of the defendant's appeal rights and is devoid of any language which may be

THE COURT: Mr. Neukam, while you're coming to the desk, let me tell the defendants that in waiving your right to appeal on the merits you are not waiving the right to appeal the sentence; that is an independent right, and you will retain that one.

Do you understand that Leon?

DEFENDANT LEON HENDRICKSON: Yes, your Honor.

It is clear from this discussion that Hendrickson fully understood that he retained the right to appeal the sentence imposed. By Hendrickson's own reasoning, it would be "patently unfair" to interpret the plea agreement as allowing Hendrickson to retain the right to appeal the sentence imposed by the district court while finding that the government had waived its right to appeal.[4] Accordingly, the Court finds that neither Hendrickson nor the government waived their rights to appeal the sentence imposed by the district court.

■ In its appeal, the government argues that the district court erred when it found that the payment of a statutory forfeiture could be the basis for finding "extraordinary acceptance of responsibility" which would, in turn, justify a departure from the Guidelines. A district court is constrained to impose a sentence within the applicable guideline range unless the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *See also* U.S.S.G. § 5K2.0; *United States v. Frazier,* 979 F.2d 1227, 1229 (7th Cir.1992). In reviewing a district court's de-

construed as a waiver by the government. The reasoning and holding in *Guevara* would seem to ignore the statutory authority given the Solicitor General to decide whether an appeal will or will not be taken in a particular case and require interpolation of a waiver provision on the basis of fairness. The question posed by *Guevara* is an open one in the Seventh Circuit. The present case, however, does not require us to resolve the matter since Hendrickson did not waive his right to appeal the sentence imposed by the district court. As such, this question shall, for now, remain an open one in this Circuit.

parture from the Guidelines, this Court employs a three-part test aided by the district court's explanations at the time of sentencing. *United States v. Gaddy*, 909 F.2d 196, 198–99 (7th Cir.1990). First, we must determine whether the district court has stated adequate grounds for the departure. This is a question of law and is reviewed *de novo. Id.* Second, we must determine whether the facts which underlie the grounds for the departure actually exist. This determination is reviewed using the clearly erroneous standard of review. *Id.* Third, we must determine whether the degree of departure is linked to the structure of the Guidelines. The district court's findings on what degree of departure is appropriate are given deference. *Id.* The district court departed from the Guidelines in this case based upon its finding that Hendrickson exhibited extraordinary acceptance of responsibility. This finding was, in turn, based upon Hendrickson's voluntary payment of the entire $742,555 mandatory forfeiture immediately prior to sentencing. Therefore, the question this Court must resolve is whether the payment of a mandatory forfeiture can ever be a proper ground for finding extraordinary acceptance of responsibility. This is a question of law which requires *de novo* review.[5]

Initially, we find that the Sentencing Commission adequately considered both the possibility of statutory forfeiture and degree of hardship a forfeiture could work when constructing the Guidelines. Section 5E1.4 explicitly states that "[f]orfeiture is to be imposed upon a convicted defendant as provided by statute." As such, it is readily apparent that forfeiture was considered by the Sentencing Commission and was intended to be imposed in addition to, not in lieu of, incarceration. *See United States v. Crook*, 9 F.3d 1422, 1426 (9th Cir.1993); *United States v. Shirk*, 981 F.2d 1382, 1397 (3rd Cir.1992), vacated and remanded on other grounds, —— U.S. ——, 114 S.Ct. 873, 127 L.Ed.2d 70 (1994). The statute applicable in this case,

18 U.S.C. § 982(a)(1), provides for mandatory forfeiture of property in cases involving a conviction for money laundering. In addition, the "extremely punitive and burdensome" nature of forfeitures of the type imposed in this case was also considered by the Sentencing Commission. The assets to be forfeited by Hendrickson were identified pursuant to 18 U.S.C. § 982(b)(2). This subsection requires the forfeiture of substitute assets when a defendant's money laundering activities exceed a specified dollar volume. Specifically, § 982(b)(2) states:

> The substitution of assets provisions of subsection 413(p) shall not be used to order a defendant to forfeit assets in place of actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period.

It is plain from the language of section 982(b)(2) that the onerous nature of forfeiture of substitute assets was considered by both Congress and the Sentencing Commission. Intermediaries, who do not retain the property laundered, but instead only reap a profit from their illicit transactions, are not subject to the substitute assets provision of § 982(b)(2) unless they exceed the $100,000 threshold established by the subsection. Thus, only intermediaries, such as Hendrickson, who are financially capable of laundering large amounts of property are required to forfeit substitute assets, and the possibility of an oppressively high forfeiture to profit ratio for such intermediaries plainly was contemplated. As such, an "extremely punitive and burdensome" forfeiture for certain intermediaries was explicitly contemplated by 18

---

**5.** Hendrickson argues that a clearly erroneous standard should apply in this case. The clearly erroneous standard only applies to the review of the facts that underlie the grounds for the departure from the guidelines. Whether Hendrickson actually paid the entire amount of the forfeiture prior to sentencing is not disputed by the govern-

ment. Rather, the government's appeal raises the issue of whether, as a matter of law, the payment of a mandatory forfeiture can ever be the basis for finding extraordinary acceptance of responsibility. As such, a *de novo* review is proper in this case.

U.S.C. § 982. Therefore, it is clear that both Congress and the Sentencing Commission were aware of the severity of the burden imposed by the forfeiture of substitute assets and intended such a burden to be placed upon individuals such as Hendrickson.

 Voluntary payment of restitution prior to adjudication of guilt can be a basis for finding acceptance of responsibility which would warrant a two level *reduction* in a defendant's offense level. U.S.S.G. § 3E1.1 Application Note 1(c). Neither the payment of restitution nor the payment of a statutorily mandated forfeiture can, in and of itself, be a ground for *departing* from the Guidelines.[6] *United States v. Bean,* 18 F.3d 1367 (7th Cir.1994); *United States v. Seacott,* 15 F.3d 1380, 1388–89 (7th Cir.1994); *United States v. Crook,* 9 F.3d at 1426; *United States v. Shirk,* 981 F.2d at 1397; *United States v. Carey,* 895 F.2d 318, 323 (7th Cir.1990). Several circuits however, including this one, have held that a sentencing court may *depart* from the Guidelines when the circumstances surrounding the payment of restitution demonstrate a degree of acceptance of responsibility that is truly extraordinary and substantially in excess of that which is ordinarily present. *United States v. Bean,* 18 F.3d 1367 (7th Cir.1994); *United States v. Brown,* 985 F.2d 478, 482–83 (9th Cir.1993); *United States v. Lieberman,* 971 F.2d 989, 996 (3rd Cir.1992); *United States v. Garlich,* 951 F.2d 161, 163 (8th Cir.1991); · *United States v. Carey,* 895 F.2d at 323–24; *United States v. Davis,* 797 F.Supp. 672, 676–77 (N.D.Ind. 1992). Although courts have found that the voluntary payment of restitution may be a proper basis for a sentencing court finding extraordinary acceptance of responsibility, payment of a statutory forfeiture has not yet been found to be a proper basis for such a finding. *United Garlich,* 951 F.2d at 163; *Carey,* 895 F.2d at 323–24; *Davis,* 672 F.Supp. at 676–77. Therefore, we must decide whether payment of a mandatory forfei-

ture can ever be the basis for finding extraordinary acceptance of responsibility. We hold that it cannot.

It is the quality of voluntariness that forfeiture lacks which makes it unsuitable as a ground for finding extraordinary acceptance of responsibility. The very cornerstone for a finding of acceptance of responsibility and, therefore, a finding of extraordinary acceptance of responsibility must be the voluntary nature of the act or acts performed which underlie such a finding. Indeed, the nonexclusive considerations listed in U.S.S.G. § 3E1.1 Application Notes 1(a)-(g) either explicitly state or logically infer that the acts enumerated be of a voluntary nature. Interestingly, although "voluntary payment of restitution prior to the adjudication of guilt" is one consideration listed, payment of an amount subject to forfeiture is not listed. U.S.S.G. § 3E1.1 Application Note 1(c). The Ninth Circuit in *United States v. Crook* considered whether an extraordinary forfeiture could be the basis for finding extraordinary acceptance of responsibility. 9 F.3d 1422 (9th Cir.1993). In holding that it could not, the Ninth Circuit stated:

> We recently held in [citation omitted] that extraordinary restitution is a basis for downward departure only "to the extent it shows acceptance of responsibility." [citation omitted] Unlike extraordinary restitution, civil forfeiture is not a voluntary act which demonstrates acceptance of responsibility. Restitution is not, therefore, a viable analogy.

*Id.* at 1426. We are in agreement with the Ninth Circuit. Forfeiture is not a voluntary act and cannot be a ground for finding extraordinary acceptance of responsibility. Thus, the district court erred as a matter of law when it departed from the Guidelines based upon extraordinary acceptance of responsibility as shown by payment of the forfeiture by Hendrickson.

---

**6.** Prompt payment of the forfeited amount does not transform forfeiture into a ground for departure from the guidelines. To hold otherwise would be tantamount to allowing the rich to "buy their way out of prison sentences." *United States v. Seacott,* 15 F.3d 1380 (7th Cir.1994). In addition, although Hendrickson argues that vol-

untarily paying a forfeited amount promptly saves the government time and expense, it can also be said that it is economically rational for a party required to pay a forfeiture to do so on a timely basis rather than incurring additional costs in what may ultimately prove to be a futile effort to forestall the inevitable.

### III. Conclusion

We conclude that the district court erred as a matter of law when it departed from the guideline range for incarceration grounded upon its finding of extraordinary acceptance of responsibility which was, in turn, based upon Hendrickson's payment of a mandatory forfeiture. Payment of a forfeiture mandated by statute is not voluntary and cannot be a ground for a finding of extraordinary acceptance of responsibility. As such, a departure from the guideline range for the reasons stated by the district court was not reasonable. Therefore, we VACATE Hendrickson's sentence and REMAND to the district court for resentencing consistent with this opinion.