**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                No. 95-5665

LEWIS WEINBERGER,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-92-266)

Argued: June 7, 1996

Decided: August 2, 1996

Before WILKINSON, Chief Judge, and HAMILTON and LUTTIG,
Circuit Judges.

_____

Vacated and remanded for resentencing by published opinion. Chief
Judge Wilkinson wrote the opinion, in which Judge Hamilton and
Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Brian Lee Whisler, Assistant United States Attorney,
Charlotte, North Carolina, for Appellant. Richard Blair Fennell,
JAMES, MCELROY & DIEHL, Charlotte, North Carolina, for
Appellee. **ON BRIEF:** Kenneth D. Bell, Acting United States Attor-
ney, Charlotte, North Carolina, for Appellant. Edward T. Hinson, Jr.,
Charlotte, North Carolina, for Appellee.

**OPINION**

WILKINSON, Chief Judge:

In this case we review the district court's downward departure under the United States Sentencing Guidelines (U.S.S.G.) based on appellee's exposure to civil forfeiture. Because we conclude that exposure to civil forfeiture is not a valid basis for departure under the Sentencing Guidelines, we vacate the sentence and remand for resentencing within the applicable guidelines range.

I.

Lewis Weinberger, a Charlotte, North Carolina podiatrist, was indicted in 1992 for the fraudulent submission of health care claims to the Medicaid and Medicare programs. In a 1993 superseding indictment, Weinberger was charged with mail fraud, Medicaid/Medicare fraud, making a false statement, and money laundering. The superseding indictment alleged that Weinberger had submitted at least $808,000 in false claims. The government also initiated a civil forfeiture action against Weinberger.

The nature of Weinberger's fraudulent activity varied. In some cases, he would bill routine foot examinations of nursing home patients as surgical procedures. In others, he would bill non-reimbursable toenail trimming as reimbursable procedures known as avulsions or matricectomies. In still others, he would bill for services he had never performed -- as in cases where patients had been absent from nursing home facilities on the date in question or had already had both feet amputated. Signatures were often forged on the forms submitted for fabricated procedures.

In December, 1994, Weinberger and the United States entered a plea agreement. Under the agreement, Weinberger agreed to plead guilty to one count of mail fraud. The agreement provided that the adjusted offense level under the guidelines would be 11 or 13 and that any sentence would be within the guidelines range under Fed. R. Crim. P. 11(e)(1)(C). For purposes of guidelines calculations, the parties agreed that the loss amount was $69,640.83; this figure was based

2

on actual government audits of a portion of the large number of allegedly fraudulent claims Weinberger submitted.

Under the plea agreement, Weinberger also agreed to pay restitution. As to the amount of restitution, the parties stipulated to a projection from the $69,640 actual loss figure. The agreement observed that "[f]or purposes of this criminal case only, the true and correct amount of restitution is stipulated to be $545,715.62." Under the agreement, any assets Weinberger surrendered pursuant to the civil forfeiture proceeding would be credited against the amount of restitution he owed. Nothing in the plea agreement, however, was to "affect the determination of the amount of loss or forfeiture" in the forfeiture proceeding. With respect to this restitution, the agreement noted that Weinberger had the "right to argue for, and the United States shall have the right to oppose, a reduction in the offense level on a theory of extraordinary restitution."

In December, 1994, Weinberger and the government entered a consent judgment in the civil forfeiture action. Weinberger agreed to forfeit over $600,000 in bank and investment accounts, as well as a car. This forfeiture was credited against the restitution that Weinberger agreed to pay in the plea agreement.

At Weinberger's July, 1995, sentencing, the parties agreed to a starting offense level of 11, criminal history category I, which calls for 8 to 14 months of imprisonment.[1] After resolving other matters not relevant here, the district judge departed downward three levels to an offense level of 8, which calls for 0 to 6 months of imprisonment. This departure, the judge said, was pursuant to § 5K2.0 of the guidelines. In explaining his reason for departure, the judge said that the government, as a result of the civil forfeiture, had already received "not only everything that was paid over the course of the period of time, but more." Because the government obtained over $600,000 in the forfeiture action and the plea agreement set the restitution amount at $545,000, the government, according to the court, recovered a sum

_____

[1] The base offense level for the mail fraud count was 6. U.S.S.G. § 2F1.1(a). Because the actual loss was between $40,000 and $70,000, five levels were added. U.S.S.G. § 2F1.1(b)(1)(F).

3

"beyond complete restitution" which according to the judge was a "circumstance not anticipated by the Sentencing Commission."

The court thereafter imposed a sentence of four years probation, a $10,000 fine, and $545,000 restitution, which was satisfied by the civil forfeiture. The government now appeals.

II.

Weinberger contends that the district court's three-level departure in this case was proper. Section 5K2.0 allows a sentence outside the guidelines range if the court finds that "`that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . .'" U.S.S.G. § 5K2.0 (policy statement) (quoting 18 U.S.C. § 3553(b)). Weinberger argues that § 5K2.0 applies here because the Commission did not adequately contemplate the possibility of "extraordinary forfeitures" where the government's civil forfeiture settlement may exceed the amount the defendant allegedly defrauded the government.

We disagree. Given the comprehensive sentencing structure embodied in the guidelines, "[o]nly rarely will we conclude that a factor was not adequately taken into consideration by the Commission." United States v. Jones, 18 F.3d 1145, 1149 (4th Cir. 1994); see also United States v. Bell, 974 F.2d 537, 538 (4th Cir. 1992). This is not one of those rare cases. Section 5E1.4 of the guidelines states that: "Forfeiture is to be imposed upon a convicted defendant as provided by statute." U.S.S.G. § 5E1.4. As both the Third and the Ninth Circuit have concluded, this section makes apparent that"the Commission considered forfeiture when creating the guideline ranges for terms of imprisonment." United States v. Shirk, 981 F.2d 1382, 1397 (3d Cir. 1992), vacated on other grounds, 114 S.Ct. 655 (1994); see also United States v. Crook, 9 F.3d 1422, 1425-27 (9th Cir. 1993), cert. denied, 114 S.Ct. 1841 (1994).

The "straightforward mandate" of § 5E1.4 means "that the Commission viewed monetary forfeiture as entirely distinct from the issue of imprisonment." Shirk, 981 F.2d at 1397. The Commission recognized the fact that procedures for forfeiture are set forth in a compre-

4

hensive statutory framework of their own, one which is separate and apart from the sentencing guidelines. Consequently, exposure to forfeiture is simply not a valid basis for downward departure under § 5K2.0. Crook, 9 F.3d at 1425-27; Shirk, 981 F.2d at 1397. "[I]t is readily apparent that forfeiture was considered by the Sentencing Commission and was intended to be imposed in addition to, not in lieu of, incarceration." United States v. Hendrickson, 22 F.3d 170, 175 (7th Cir.), cert. denied, 115 S.Ct. 209 (1994). Weinberger's approach, by contrast, would plainly undermine U.S.S.G. § 5E1.4. Reducing a sentence based on a defendant's exposure to forfeiture would link the precise matters that the Sentencing Commission intended to keep separate. Shirk, 981 F.2d at 1397.

Moreover, unlike other justifications for downward departure, civil forfeiture actions do not suggest any reduced culpability or contrition on the part of a defendant that might warrant a sentence reduction. Under the guidelines, a court may depart downward based on substantial assistance to the authorities, § 5K1.1; wrongful conduct by the victim, § 5K2.10; coercion and duress, § 5K2.12; diminished capacity, § 5K2.13; and voluntary disclosure of the offense, § 5K2.16. In contrast to these reasons for downward departure, a defendant's exposure to forfeiture bears little relationship to the defendant's culpability or contrition -- instead, forfeiture actions signify that a defendant possessed contraband or property derived from (or used to facilitate) unlawful activity, see, e.g. 21 U.S.C. § 881. Authorizing downward departures based on collateral forfeiture actions would only benefit those defendants whose crimes subject them to forfeiture, namely, those whose crimes involve substantial cash or property. There is no reason to allow such defendants to attempt to "`buy their way out of prison sentences.'" Hendrickson, 22 F.3d at 176 n.6 (citation omitted). Indeed, if a defendant believes he has been subject to "extraordinary forfeiture," the remedy is not for that defendant to seek a reduced prison term, but to contest the forfeiture itself.

Finally, we reject any attempt to analogize extraordinary forfeitures to the theory of "extraordinary restitution," which some circuits have held to be a valid basis for downward departure. Payment of restitution prior to the adjudication of guilt may qualify a defendant for a reduction based on acceptance of responsibility. U.S.S.G. § 3E1.1(a) (application note 1(c)). Drawing on this provision, some circuits have held that extraordinary restitution may also properly qualify a defen-

5

dant for a departure under § 5K2.0. <u>See, e.g. United States v. Lieberman</u>, 971 F.2d 989, 995-96 (3d Cir. 1992); <u>United States v. Garlich</u>, 951 F.2d 161, 163 (8th Cir. 1991). The theory of extraordinary restitution, however, is a basis for downward departure only to the extent that it shows "a degree of acceptance of responsibility that is truly extraordinary and substantially in excess of that which is ordinarily present." <u>Hendrickson</u>, 22 F.3d at 176; <u>Crook</u>, 9 F.3d at 1426. Whatever the merits of this theory in the context of restitution (a question we do not pass on here), it makes no sense in the context of civil forfeiture. <u>Id.</u> "It is the quality of voluntariness that forfeiture lacks which makes it unsuitable as a ground for finding extraordinary acceptance of responsibility." <u>Hendrickson</u>, 22 F.3d at 176.

In sum, the district court relied on an invalid basis for downward departure under § 5K2.0, namely, that the size of the civil forfeiture in Weinberger's case rendered it a valid basis for a downward departure under the guidelines.**2** The court's action was an error of law and "by definition" was an abuse of discretion. <u>Koon v. United States</u>, 64 U.S.L.W. 4512, 4517 (June 13, 1996).**3**

III.

For the foregoing reasons, we vacate the sentence and remand for resentencing within the applicable guidelines range.

<u>SO ORDERED</u>
_____

**2** The plea agreement does not change our conclusion that the downward departure was invalid. Under the agreement, Weinberger reserved the right to argue for a downward departure based on "extraordinary restitution," but the government also reserved the right to oppose such a departure. We also note that because we find the departure invalid under the guidelines, we need not reach the government's alternative argument that the departure was invalid under Fed. R. Crim. P. 11(e)(1)(C).

**3** The Supreme Court recently clarified the standard of review for downward departures in <u>Koon</u>, 64 U.S.L.W. 4512. Under <u>Koon</u>, we review the district court's departure decisions for abuse of discretion. 64 U.S.L.W. at 4516-17. Nonetheless, "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." <u>Id.</u> at 4517.