**UNITED STATES of America, Plaintiff,**

v.

**Antoine Jamar DEAN, Defendant.**

**CR No. 96–295–MA.**

United States District Court,
D. Oregon.

Dec. 11, 1996.

---

Kristine Olson, United States Attorney, District of Oregon, Stephen F. Peifer, Assistant United States Attorney, Portland, OR, for Plaintiff.

Christopher J. Schatz, Assistant Federal Public Defender, Portland, OR, for Defendant.

## OPINION & ORDER

MARSH, District Judge.

On October 7, 1996, defendant appeared for sentencing following his entry of a guilty plea pursuant to Rule 11(e)(1)(C) for knowingly and maliciously destroying real property affecting interstate commerce by fire in violation of 18 U.S.C. § 844(i). With a criminal history category of VI and an offense level of 17, the sentencing guidelines called for a sentence of 51–63 months. Pursuant to 18 U.S.C. § 844(i), a mandatory minimum sentence of 60 months was required. By accepting the parties' plea agreement, I agreed to sentence the defendant to 60 months imprisonment.

At the time of the plea, an issue arose regarding application of the 1996 Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A. Defendant indicated that he intended to challenge the constitutionality of the MVRA but agreed that his plea was not contingent upon my acceptance of this challenge. Thus, I advised defendant at the entry of his plea that his sentence may include an order of full restitution pursuant to the terms of the MVRA.

With the preparation of the presentence report, the total amount of the loss from defendant's conduct was determined to be $116,000. Because the fire was covered by insurance, the victim's insurer was identified as the recipient of any restitution funds recovered. Three days prior to the date set for sentencing, defendant submitted a letter objecting to the MVRA on grounds that its application violated the Seventh and Eighth Amendments and the Equal Protection Clause. In addition, defendant objected to the $25/month payment schedule proposed by probation, arguing that he lacked the financial resources to pay such an amount. Defendant suggested a nominal payment of $1/month. However, defendant came forward with no evidence of his financial condition, nor did he submit a financial affidavit required under the MVRA, § 3664(d)(3). With the parties' concurrence, we proceeded with sentencing, reserving the issue of restitution for further briefing by both parties. The government submitted a response opposing constitutional invalidation of the MVRA and defendant filed a reply brief thereafter. I set a hearing for consideration of any further evidence and argument for December 11, 1996.

On November 25, 1996, probation provided a supplemental report which indicates that the revised loss figure for the fire, including certain costs not covered by insurance, is $121,403.10.

### Discussion

Under the MVRA, when a defendant is convicted of an offense "resulting in damage to or loss or destruction of property of a victim of the offense," the court "shall order" full restitution in the amount of the value of the property on the date of the loss. Such restitution is to be a condition of probation and must be imposed "without consideration of the economic circumstances of the defendant." § 3664(f)(1)(A). The government bears the burden of establishing the amount of the loss while the burden of demonstrating the financial resources and needs of the defendant and any dependents rests with the defendant. § 3664(e).

The most significant changes between the MVRA and its predecessor, the Victim and Witness Protection Act (VWPA), are the following: (1) the MVRA requires that the court impose "full" restitution, plus interest, for certain offenses regardless of the financial condition of the defendant; (2) where a defendant establishes indigency, the court must set a nominal payment schedule; (3) restitution remains in full force and effect, and is non-dischargeable in bankruptcy, until paid or until 20 years following the defendant's release from prison; and (4) the MVRA expressly prohibits incarceration for failure to pay restitution absent a finding that such failure is willful. § 3614(c). Upon finding a non-wilful default, my options are limited under § 3613A to such actions as revising the payment schedule or seizing property for sale. While the VWPA mandated that the court consider a defendant's ability to pay and the impact on his dependents in determining the **amount** of restitution to order, the MVRA mandates consideration of such factors only in determining a payment schedule.

The parties have cited, and I have found, only one published decision in which this Act has been constitutionally challenged. In *United States v. Kemp*, 938 F.Supp. 1554 (N.D.Ala.1996), Judge Acker criticizes the MVRA as unworkable and questions its constitutional viability. Given his questions, Judge Acker concludes that the MVRA is unconstitutional "in application to Kemp" but then orders restitution pursuant to his "ancient, honorable, discretionary and inherent power."

While Judge Acker raises several valid, sincerely held, concerns about the practicality and effectiveness of the Act, he provides little in the way of legal, constitutional analysis. Further, *Kemp* was a factually simpler case, involving a bank robbery in which the defendant took approximately $4000, $3500 of which was recovered, leaving a deficit for a restitution order of just slightly over $500. Even under the prior VWPA, courts in this district typically require full restitution for bank robbery convictions in nominal payments commencing either during or following incarceration even though most of these de-

fendants are indigent at the time of sentencing. The only other instances in which restitution typically arises is in the white-collar context for tax or criminal fraud violations where restitution serves to disgorge illicitly gained income. *See e.g. United States v. English*, 92 F.3d 909 (9th Cir.1996) (restitution of over $880,000 ordered in securities fraud and money laundering conviction); *United States v. Graham*, 72 F.3d 352 (3rd Cir.1995) (restitution of $46,000 for counterfeit securities scheme).

The Eighth Amendment provides that "[E]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted." The excessive fine clause and cruel and unusual clause involve distinctive inquiries. *United States v. Real Property Located in El Dorado County*, 59 F.3d 974 (9th Cir.1995); *see also Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 263, n. 3, 109 S.Ct. 2909, 2913–14, n. 3, 106 L.Ed.2d 219 (1989). The Supreme Court has noted that "the primary focus of the Eighth Amendment was the potential for governmental abuse of its prosecutorial power." *Browning–Ferris*, 492 U.S. at 266, 109 S.Ct. at 2915.

Few cases address application of the Eighth Amendment to an order of criminal restitution. In *United States v. Keith*, 754 F.2d 1388 (9th Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 93, 88 L.Ed.2d 76 (1985), the court rejected a defendant's Eighth Amendment challenge to the VWPA on grounds that he could not be incarcerated for default absent a willful violation. The court did not address the excessiveness of the award and apparently was solely concerned with the possibility that incarceration for an inability to make payments might constitute cruel and unusual punishment. Other Ninth Circuit decisions which review restitution order amounts have done so solely on the basis of determining whether the sentencing court abused the discretion afforded by the VWPA to set the amount of restitution. *See United States v. Smith*, 944 F.2d 618 (9th Cir.1991). In *Smith*, the defendant was convicted of bank fraud and sentenced to 10 years imprisonment and ordered to pay restitution in the amount of $12 million within 5 years of his

release from prison. Smith challenged the restitution order on several grounds, including impossibility. The court emphasized that a defendant's indigency was not a bar, under the Act, to imposition of restitution. *Id.* at 622. The court upheld the order, finding that while it might be difficult for Smith to satisfy the restitution order, there were facts in the record to support the trial court's conclusion that the defendant might be able to pay under the original or an extended schedule. The court expressly rejected the argument, raised by the dissent, that the unlikelihood of full recovery should preclude the order of full restitution:

> " 'if full restitution is not ordered at the time of sentencing, an indigent defendant would evade the statutory purpose of making the victim whole in the event that he should come into sufficient funds.' by this reasoning, the district judge in this case should not be reversed for imposing a restitution award that would fully compensate the victim."

*Id.* at 623–24, n. 2, *citing United States v. Atkinson,* 788 F.2d 900, 904 (2d Cir.1986).

One court, in a footnote, rejected a defendant's claim that a restitution order was disproportionate to the gravity of his offense as "without merit." *United States v. Graham,* 72 F.3d 352, 358 n. 7 (3rd Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1286, 134 L.Ed.2d 230 (1986). In addition, one district court has held that restitution does not constitute a "punishment" and thus, is not subject to scrutiny under the cruel and unusual clause of the Eighth Amendment. *United States v. Marron,* 1996 WL 677511, \*7 (E.D.Pa.1996); *see also United States v. Various Computers and Computer Equipment,* 82 F.3d 582, 587 (3rd Cir.1996) (forfeiture of criminal proceeds does not constitute punishment subject to Eighth Amendment review), *cert. denied,* —— U.S. ——, 117 S.Ct. 406, 136 L.Ed.2d 320 (1996). The fact that there is a punitive aspect to a restitution order is not dispositive of the Eighth Amendment question where the MVRA also clearly serves the important non-punitive goal of providing some relief to the victims. *See United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996) (holding civil in rem forfeiture does not constitute punishment under the double jeopardy clause); *see also United States v. Crook,* 9 F.3d 1422, 1426, n. 6 (9th Cir.1993) (acknowledging that Congress may provide, within constitutional boundaries, that a given offense may result in several different types of punishment).

Defendant relies upon several decisions which review criminal and civil forfeiture awards under the Eighth Amendment's excessive fine clause and urges that I utilize the standards from those decisions in assessing the proportionality of the restitution in this case. Under *United States v. El Dorado,* the Ninth Circuit set forth a two-pronged approach for evaluating the excessiveness of a civil in rem forfeiture of real property following a defendant's conviction for the sale of marijuana. The factors courts must consider, on a sliding scale, include: (1) whether and to what degree that property constitutes an instrumentality of the offense; and (2) an examination of whether the properties' worth is proportional to the culpability of the owner when considered against other punishments already administered. The court noted that such proportionality review was particularly appropriate where the state stood to benefit. 59 F.3d at 983. Further, the court cited as an example the fact that it would be unfair to find that the recovery of one marijuana plant from an 825,000 ranch should lead to the forfeiture of the entire ranch. *Id.* at 986.

Forfeiture and restitution are clearly distinct concepts in the criminal law. *See United States v. Crook,* 9 F.3d 1422 (9th Cir.1993) (noting that while extraordinary restitution may constitute viable ground for departure, civil forfeiture does not), *cert. denied,* 511 U.S. 1086, 114 S.Ct. 1841, 128 L.Ed.2d 467 (1994). Forfeiture seizes assets that the defendant has based upon the property's facilitation of an offense or because the property constitutes ill-gotten proceeds. Restitution, by contrast, seeks to repay the victims of crime for their out of pocket expenses. In this case, the property destroyed by fire was not an instrumentality of the offense nor does it constitute proceeds. Thus, the first prong within the *El Dorado* continuum drops out. Further, any recoupment will be paid to

the victims' insurers rather than the state, lessening the need for scrutiny under *El Dorado*. Given these significant differences, I decline defendant's suggestion that I simply extend the reasoning and analysis of *El Dorado* to review excessiveness under the Eight Amendment as applied to criminal restitution. Where the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order. Had the defendant set fire to a garbage can, his restitution obligation might be in the range of $25; had the defendant set fire to an office building, he could have faced a restitution obligation in the multi-millions. By choosing his target, the defendant is the one who essentially determines his restitution obligation.

However, restitution is clearly an integral part of the criminal sentencing process. *See United States v. Cloud*, 872 F.2d 846, 854–55, n. 11 (9th Cir.), *cert. denied*, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989).[1] In *United States v. Feldman*, 853 F.2d 648 (9th Cir.1988), *cert. denied*, 489 U.S. 1030, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989), the court applied the Eighth Amendment to a defendant's claim that his overall sentence, which included an order of restitution, was excessive. Feldman was convicted of 18 counts of wire fraud, RICO violations and other offenses arising out of a complex scheme in which Feldman received insurance proceeds following the arson fires of several of his businesses. Feldman received concurrent sentences of 10 years, forfeited $1,986,990 and was ordered to pay an equal amount in restitution. Although Feldman invoked the cruel and unusual punishment clause, the court reviewed the overall sentence and found it proportional to his convictions. *Id.* at 663–664.

The facts in this case are truly unique in that we have a federal conviction involving the destruction of property wherein the defendant gleaned no profit. Further, unlike the tax and securities fraud cases, this defendant is 21 years old and has never completed

high school. According to the presentence report, defendant has held only two jobs, one for one day and another on a part-time basis earning $6/hour for approximately four months. Defendant has one child who is now four years old. Although healthy and able-bodied, his prospects for future employment do not indicate that he has the ability to pay $120,000 over the next 25 years are negligible. If I adopted the nominal payment schedule suggested by probation of $25/month and assumed such payments started immediately and continued for 20 years following defendant's release from custody, it would yield a recovery of $7500, far short of the "full restitution" figure contemplated by the Act. The strictly symbolic nature of such an order is compounded further by the interest which accrues on any unpaid restitution order since, as defendant correctly notes, such nominal payments in this case would not even cover interest charges.

While the defendant has failed to come forward with any information regarding his present or future financial status, probation advises that while incarcerated, defendant will earn between $.12–$.40/hour for work in a federal institution. After serving his sentence for at least two years, he will become eligible for employment with Unicor in which the wage range increases to $.25–$1.15/hour. Thus, assuming defendant starts at the institutional minimum wage of $.12/hour for a 40-hour work week, he will be earning $19.20/month.

Considering the overall proportionality of the offense under either Eighth Amendment clause, I find that the overall sentence imposed along with an order of full restitution under the MVRA is within constitutional limits. Defendant received the statutory minimum sentence of 5 years along with a fee assessment of $100. Under a nominal payment schedule with the MVRA's 20 year post-release limit, defendant's actual payment will be modest and in alignment with his ability to pay. Although not directly applicable, I note that the restitution order is also within the statutory maximum for a fine

---

**1.** As such, defendant's contention that the restitution process violates his Seventh Amendment right to a jury trial is clearly without merit. An

identical charge under the VWPA was squarely rejected by the Ninth Circuit in *Keith*, 754 F.2d at 1391.

for this offense. Accordingly, the judgment shall be amended to include a restitution obligation of $121,403.00.

Because defendant has failed to come forward with any evidence relative to his ability to pay, my assessment is limited to the information gleaned from the presentence report. Given current Bureau of Prison pay scales, I find that defendant can pay $5 per month during his incarceration after he qualifies for in custody employment. Following his release, defendant shall pay restitution at the rate of $25 per month for a 20 year period. Should the defendant's financial condition change or should he be unable to meet this obligation, this schedule shall be subject to modification pursuant to the terms set forth in 18 U.S.C. §§ 3664(n) and 3613A.

IT IS SO ORDERED.