In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2559

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

DENISE GRASSER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 709—**Wayne R. Andersen**, *Judge.*

ARGUED OCTOBER 31, 2002—DECIDED DECEMBER 6, 2002

Before RIPPLE, MANION, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* On this appeal, the government challenges a significant downward departure—it moved the defendant from a sentencing range of 18 to 24 months to a range where the actual sentence imposed was only 4 months, and that was under "community confinement" with work release. The departure was awarded for what the court termed "exceptional acceptance of responsibility." The apparent basis for the departure was the defendant's partial payment of restitution before she was sentenced. The less-than-apparent basis for the departure was the defendant's family situation and, despite the fact that she was 35 years old, her "horrible sexual abuse as a child."

Denise Grasser was the assistant branch manager of the Success National Bank. In April of last year, the bank arranged to have several safe deposit boxes "drilled open," apparently a fairly common practice when customers fail to pay box maintenance fees. As a standard operating procedure, the bank sends a notice to a customer which says his box will be opened if he fails to pay delinquent fees or fails to contact the bank within a specified period of time. When the customer fails to respond, the box is drilled open and its contents are inventoried and placed in a separate, secure vault. Or at least that's supposed to be the SOP.

Things didn't go according to Hoyle in April of 2001 when Grasser took jewelry from either one or two boxes and hid it under her desk. Contrary to policy, the jewelry was not inventoried, and subsequently, when its owner came to the bank (he was on vacation and not able to get there until after the box was opened), the cupboard was bare. To avoid detection while this was occurring, Grasser put the jewelry in a brown paper bag and hid it in the employee break room's coffee cabinet.

While police were investigating the disappearance of the jewelry, Grasser lied about her involvement in the theft. But then, bank officers uncovered a major discrepancy in one of Grasser's customer's account. The account, owned by an Alzheimer's patient confined to a nursing home, was $87,991 short. After this discovery, apparently sensing that it was not in the cards to keep this game going, Grasser confessed to looting the account over 3 years and pilfering the jewelry. She admitted taking $87,991, and she pointed the bank officials to the coffee cabinet, where the purloined jewelry was recovered.

Grasser's shenanigans led to trouble on two fronts: First, the bank filed a civil suit against her seeking the return of the money taken from the Alzheimer's patient's account;

a few months later a pair of federal criminal charges—bank theft, in violation of 18 U.S.C. § 2113(b), and bank fraud, in violation of 18 U.S.C. § 1344—was filed against her. The civil suit was resolved by a settlement agreement wherein Grasser agreed to repay the embezzled money with interest. As part of an effort to reach that end, Grasser assigned to the bank her interest in a parcel of real estate she owned in Twin Lakes, Wisconsin, with a value apparently of something in the neighborhood of $33,000. The balance was to be repaid at a rate of $1,000 per month. On the day the civil suit was settled, 5 months after the criminal proceedings commenced, Grasser entered guilty pleas to the theft and fraud charges.

Fifteen years ago, judges could exercise considerable sentencing discretion in cases like this. Grasser, of course, did some terrible things, but she is not an altogether unsympathetic defendant. So, in years past, punishments in cases like this could vary greatly, depending upon the perception, and even whim, of the sentencing judge. But that all changed in 1987 when the federal sentencing guidelines took effect. And as we know today, the guidelines significantly cabined the sentencing discretion of trial judges. In this case, we can understand the inclination of the experienced district judge to give Ms. Grasser a break, but the departure he ordered cannot be sanctioned.

We review departures from the guidelines for an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 98 (1996); *United States v. Purchess*, 107 F.3d 1261, 1270 (7th Cir. 1997). In this case, because the facts are undisputed, the trial judge's conclusions, including interpretations of the guidelines, are reviewed *de novo*. *Koon*, 518 U.S. at 100; *United States v. Mojica*, 185 F.3d 780, 791 (7th Cir. 1999).

When reviewing a district court's decision to depart from the applicable guideline range, we consider several factors, two of which are whether the grounds for the

departure are appropriate and whether the extent of the departure is reasonable. *See United States v. Simmons*, 215 F.3d 737, 742 (7th Cir. 2000). The departure here was inappropriate on the first point and, had it not been, the degree of departure would have to be reconsidered.

As the guidelines say (§5K2.0) and we have repeated many times, "[a] district court is constrained to impose a sentence within the applicable guideline range unless the court 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.'" *United States v. Hendrickson*, 22 F.3d 170, 174 (7th Cir. 1994) (citing 18 U.S.C. § 3553(b); U.S.S.G. §5K2.0; *United States v. Frazier*, 979 F.2d 1227, 1229 (7th Cir. 1992)). Thus, a departure is justified only if the pertinent sentencing factor (1) is "of a kind, or [(2) is present in the case] to a degree, not adequately taken into consideration by the Sentencing Commission . . . ." 18 U.S.C. § 3553(b).

The pertinent sentencing factor here—acceptance of responsibility—is obviously *not* "a mitigating circumstance of a kind . . . not adequately taken into consideration by the Sentencing Commission . . . ." *Id.* In U.S.S.G. §3E1.1, the Commission recognized that acceptance of responsibility is a mitigating circumstance and provided for either a 2- or 3-level reduction when the factor is present. Grasser got a 3-point reduction for timely acceptance of responsibility, and there is no fuss about that. But could she get 6 more points? We don't think so.

The only circumstance the district court cited in support of the departure for "extraordinary acceptance of responsibility" was Grasser's payment of restitution, which came to around $37,000 when she was sentenced. The pivotal question, then, is whether Grasser's partial payment of

restitution made her acceptance of responsibility present "to a degree" not considered by the Commission. The answer to that question must be "no."

Application Note 1(c) to guideline §3E1.1 lists "voluntary payment of restitution *prior* to adjudication of guilt" as an independent reason for a 2-level acceptance of responsibility reduction. (Emphasis added.) Consistent with the application note, we have held that "[v]oluntary payment of restitution prior to adjudication of guilt can be a basis for finding acceptance of responsibility which would warrant a two level *reduction* in a defendant's offense level." *Hendrickson*, 22 F.3d at 176 (citing §3E1.1 Application Note 1(c)). In *Hendrickson*, however, we explicitly held that "[n]either the payment of restitution nor the payment of a statutorily mandated forfeiture can, in and of itself, be a ground for *departing* from the Guidelines." *Id. See also United States v. Seacott*, 15 F.3d 1380, 1388 (7th Cir. 1994) ("a sentencing court could not base a downward departure on the fact that a defendant made restitution to his victim prior to the adjudication of his guilt") (citing *United States v. Carey*, 895 F.2d 318, 323 (7th Cir. 1990)).

In *Seacott*, we explained the reasoning behind our reluctance to allow departures based on payments of restitution, stating:

> Allowing sentencing courts to depart downward based on a defendant's ability to make restitution would thwart the intent of the guidelines to punish financial crimes through terms of imprisonment by allowing those who could pay to escape prison. It would also create an unconstitutional system where the rich could in effect buy their way out of prison sentences.

*Seacott*, 15 F.3d at 1389.

Nevertheless, we have held open the possibility that a sentencing court might depart from the guidelines "when

the circumstances surrounding the payment of restitution demonstrate a degree of acceptance of responsibility that is truly extraordinary and substantially in excess of that which is ordinarily present." *Hendrickson*, 22 F.3d at 176 (citing *United States v. Bean*, 18 F.3d 1367 (7th Cir. 1994)).

In *Bean*, we considered whether a defendant's repayment of a fraudulent $75,000 bank loan *prior* to trial could form the basis of an extraordinary acceptance of responsibility departure. *Bean*, 18 F.3d at 1367. We concluded that while the defendant might be entitled to a 2-level acceptance of responsibility reduction for paying full restitution prior to the adjudication of guilt, nothing about the defendant's conduct was "so exceptional that it justified triple the reduction provided by §3E1.1(a)." *Id.* at 1369. We observed that "all [defendant] did was to pay off the principal of the involuntary loan before trial. This is *precisely* the conduct described by Application Note 1(c)." *Id.* (emphasis in original). Had the defendant stolen money from the bank and repaid the bank in full the next day, before the crime had been discovered, the *Bean* court suggested that these circumstances might justify a departure beyond ordinary acceptance of responsibility. *Id.* Without more, however, a departure for a defendant's payment of full restitution "only five days before trial" was "clearly erroneous." *Id. See United States v. Carey*, 895 F.2d 318, 323-24 (7th Cir. 1990) (departure set aside when 91 percent of restitution paid prior to conviction).

Our case presents an even less sympathetic factual scenario than in *Bean*. On the day of her sentencing, Grasser had pledged, in settling the bank's civil suit, approximately $33,000 and paid roughly $4,000 towards an $87,991 plus bill, just 42 percent of the amount she owed, not counting interest. There was nothing extraordinary about this or about the circumstances under which it was paid.

At least inferentially, two other factors may have entered into the judge's decision to depart. He explained that in addition to "extraordinary" acceptance of responsibility, the departure was "buttressed by family circumstances and defendant's psychological condition stemming from horrible sexual abuse as a child." But the judge never concluded that either of these conditions were "extraordinary," and for good reason—they weren't. A prison sentence is always disruptive, and nothing here comes close to suggesting that Ms. Grasser must receive a discount because her two teenage children will have to be attended to by her ex-husband, a firefighter/paramedic who lives in Wisconsin and at the time of the sentencing had joint custody of the children.

Finally, we have considered Ms. Grasser's "psychological" condition (like "family circumstances" a discouraged basis for departure, *see* §5H1.6; §5H1.3) as disclosed by the record and conclude that it also does not provide a basis for a departure. While the history of abuse she suffered as a child is indeed unfortunate, she was 35 years old when she committed her crimes, 22 years removed from when she was victimized.

REVERSED and REMANDED.

A true Copy:

      Teste:

———————————————<br>
*Clerk of the United States Court of*<br>
*Appeals for the Seventh Circuit*