**UNITED STATES of America,**
**Appellee,**

v.

**Santiago BERMUDEZ, Bahman Radfar, also known as William, also known as Bill, also known as Will, Nizar Kharfan, Ramez Karaawi, also known as Ramir, Martha Gallego, Sandra Kharfan, Amin Omar Said, Defendants,**

**Jamal Fakih, Hossein Radfar, also known as Ban, Nadir Kharfan, Khalil Kharfan, also known as Abul Hin also known as Boualhen, Ahmad Issa, Defendants—Appellants.**

Docket No. 02–1699(L), 03–1169(CON), 03–1232(CON), 03–1345(CON), 03–1669(CON).

United States Court of Appeals, Second Circuit.

Argued: Nov. 8, 2004.

Decided: June 29, 2005.

Lucas E. Andino, Law Office of Ivan S. Fisher, New York, New York, for Defendant–Appellant Khalil Kharfan.

Boyd M. Johnson, III, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, on the brief; Lauren Goldberg, Adam B. Siegel, of counsel), New York, New York, for Appellee.

Before: WALKER, Chief Judge, POOLER and WESLEY, Circuit Judges.

PER CURIAM.

Beginning in 1999, Khalil Kharfan and his associates laundered millions of dollars of cocaine proceeds in New York and Miami and transferred them to Colombia. Kharfan operated from Bogota, Colombia, where he directed the operation, kept detailed records on his laptop computer, and negotiated payments. Kharfan and several associates pled guilty to conspiring to launder money in violation of 18 U.S.C. § 1956(h).[1] Following Kharfan's guilty plea, the district court sentenced him to 121 months' imprisonment followed by three years' supervised release.

The district court entered two forfeiture orders. Under 18 U.S.C. § 982(a)(1), it first entered a judgment against Kharfan for $14.2 million, the stipulated amount of funds involved in the money-laundering offense. The IRS tried unsuccessfully to locate and recover the money. At the Government's request, the district court then entered an "Order of Forfeiture of Substitute Assets" under 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p) directing Khalil to forfeit to the United States all his rights in a Miami residence and in an account at Union Bank of Switzerland (UBS).

With regard to the second order, Kharfan contends that the district court erred in ordering the forfeiture of his Swiss bank account and his Miami residence as substitute assets pursuant to 21 U.S.C. § 853(p).[2] He argues that "the Government never proved that Kharfan obtained any 'proceeds' . . . from the crime charged." The Government counters that it need not prove any "proceeds." It argues that in a money-laundering case the Government may seek forfeiture of substitute assets up to the full value of the laundered funds. We agree that, at least in this money-laundering case, the Govern-

---

1. In a separate summary order issued today, we resolve the appeals of Kharfan's co-defendants.

2. Kharfan also challenges the earlier § 982(a)(1) order. He contends the district court erred in ordering the forfeiture of his UBS account and a life insurance policy. The § 982(a)(1) order, however, did not order the forfeiture of either. His appeal on this basis is thus without merit.

ment was entitled to seek forfeiture of substitute assets.

18 U.S.C. § 982 governs the entry of forfeiture judgments in money-laundering cases. Subsection (a)(1) provides, "The court in imposing sentence on a person convicted of an offense in violation of section 1956 ... shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Section 982 does not set forth its own provisions regarding forfeiture of substitute assets. Instead, subsection (b) incorporates by reference the substitute asset provisions of 21 U.S.C. § 853. *See* 18 U.S.C. § 982(b)(1) ("The forfeiture of property under this section ... shall be governed by ... (21 U.S,C. § 853)."); *see also* 18 U.S.C. § 982(b)(2) (referencing 21 U.S.C. § 853(p)).

The § 853 substitute assets provision, § 853(p), provides for the forfeiture of "substitute property" where any property described in § 853(a) cannot be located upon the exercise of due diligence as a result of any act or omission of the defendant. 21 U.S.C. § 853(p)(1)(a). Section 853(a), however, sets forth the properties that may be forfeited in narcotics prosecutions. Section 853(a) differs significantly from § 982(a)(1). In particular, while § 982(a)(1) provides for forfeiture of any property "involved" in a money-laundering offense, § 853(a) provides for forfeiture of, *inter alia*, "any property constituting, or derived from, any proceeds the person *obtained* " in a covered offense. 21 U.S.C. § 853(a)(1) (emphasis added). Kharfan argues that the substitute assets provision of §. 853(p) only applies to the extent that the laundered $14.2 million fits within this § 853(a) definition. He insists he never obtained proceeds of $14.2 million through his money-laundering activities and, therefore, that the court's order of forfeiture was error.

We reject Kharfan's argument. The "proceeds" limitation of § 853(a)(1) has no logical connection to § 982(a)(1) forfeitures. In the context of a § 853(a) forfeiture, § 853(p) defines what assets may be substituted for those forfeitable under § 853(a). Likewise, in the money-laundering context, § 853(p) defines what assets may be substituted for assets forfeitable under § 982(a)(1). Section 982(b)(2) confirms this. That subsection provides:

> The substitution of assets provisions of [21 U.S.C. § 853(p) ] shall not be used to order a defendant to forfeit assets in place of the actual property laundered where such defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense *unless* the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve month period.

18 U.S.C. § 982(b)(2) (emphasis added). The clear implication of subsection (b)(2) is that even where a defendant does not retain laundered property he will be subject to substitution of assets so long as he conducted at least three separate transactions in any twelve-month period involving a total of $100,000 or more. In Kharfan's case, this means he must forfeit substitute assets up to the amount laundered, even if he merely handled the laundered property—*i.e.,* even if he never retained those funds and consequently never obtained proceeds from them.

The Seventh Circuit's interpretation of the statute comports with this reading. In *United States v. Hendrickson,* 22 F.3d 170 (7th Cir.1994), that court considered "whether the payment of a mandatory forfeiture can ever be a proper ground for

finding extraordinary acceptance of responsibility" and held that it cannot. *Id.* at 175. In considering this question, the court noted the "extremely punitive and burdensome" nature of money laundering forfeitures where intermediaries make at least three transactions totaling more than $100,000. *Id.* It stated:

> [18 U.S.C. § 982(b)(2)] requires the forfeiture of substitute assets when a defendant's money laundering activities exceed a specified dollar volume.... It is plain from the language of section 982(b)(2) that the onerous nature of forfeiture of substitute assets was considered by both Congress and the Sentencing Commission. Intermediaries, who do not retain the property laundered, but instead only reap a profit from their illicit transactions, are not subject to the substitute assets provision of § 982(b)(2) unless they exceed the $100,000 threshold established by the subsection. Thus, only intermediaries ... who are financially capable of laundering large amounts of property are required to forfeit substitute assets, and the possibility of an oppressively high forfeiture to profit ratio for such intermediaries plainly was contemplated.

*Id.* Although such a measure may be "extremely punitive and burdensome," *id.*, we agree with the Seventh Circuit that § 982(b) provides for the forfeiture of substitute assets for certain intermediaries who launder large amounts of property.

Here, Kharfan concedes that the Government is entitled to enforce its forfeiture against the payments he received from Bahman Radfar. Three of these transactions, made in August and November 1999,

easily place Kharfan over the necessary aggregate of $100,000.[3] The substitution of assets provision is therefore applicable, and the Government could seek forfeiture of substitute assets equal to the amount of funds laundered. We therefore affirm the order of forfeiture of the district court.

### Conclusion

The district court's orders of forfeiture are hereby AFFIRMED.

---

**3.** Khalil Kharfan received two deposits of narcotics proceeds, totaling $95,000, from Bahman Radfar into his Swiss bank account in November 1999. In August and December 1999, three checks totaling $91,000 were transferred by Radfar and used to pay for Kharfan's insurance policy. Kharfan conceded in his brief that these funds were receipts of laundered money. The total of these five transactions, made within the course of one year, is $186,000.