**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4161

DOROTHY ANN PARSONS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
William L. Osteen, Sr., District Judge.
(CR-94-134)

Argued: March 6, 1997

Decided: April 7, 1997

Before MICHAEL and MOTZ, Circuit Judges, and GOODWIN,
United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Michael and Judge Goodwin joined.

_____

**COUNSEL**

**ARGUED:** Harold Johnson Bender, LAW OFFICES OF HAROLD
J. BENDER, Charlotte, North Carolina, for Appellant. Robert James
Conrad, Jr., Criminal Chief/Assistant United States Attorney, Char-
lotte, North Carolina, for Appellee. **ON BRIEF:**  Mark T. Calloway,
United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

After a postal service employee was convicted of crimes based upon her filing of partially fraudulent travel vouchers, the district court sentenced her to thirteen months imprisonment. In calculating the sentence the court concluded that the entire amount claimed in the travel vouchers, including both fraudulent and legitimate reimbursement requests, constituted a loss to the Government. Because the Government suffered no loss of the funds it had authorized the employee to spend -- and which she rightfully did spend -- we vacate the sentence and remand.

I.

Prior to January, 1993, the United States Postal Service employed Dorothy Ann Parsons as a Level 24 postmaster in Racine, Wisconsin. In mid-January, 1993 Parsons accepted a position as a Level 26 Postmaster in Charlotte, North Carolina. Parsons signed a travel and relocation agreement with the Post Office. The agreement required Parsons to file travel vouchers for any necessary cash advances or reimbursements. Parsons filed a number of partially fraudulent travel vouchers, and also assertedly lied to postal investigators.

Following an investigation by postal authorities, Parsons was indicted on ten counts of mail fraud in violation of 18 U.S.C. § 1341 (1994), three counts of filing false claims in violation of 18 U.S.C. § 287 (1994), and three counts of making false statements to the United States in violation of 18 U.S.C. § 1001 (1994). A jury convicted Parsons of two counts of mail fraud, one count of filing false claims and three counts of making false statements. She was found not guilty on four of the mail fraud counts, and the jury deadlocked on the remaining counts. The Government subsequently dismissed the deadlocked counts.

Parsons' convictions were grouped for sentencing purposes under sentencing guideline § 3D1.2. See U.S. Sentencing Guidelines Manual § 3D1.2 (1995). Violations of 18 U.S.C.§§ 287, 1001, and 1341

2

are sentenced under § 2F1.1. See U.S.S.G. § 2F1.1. The base offense level under § 2F1.1 is six. The district court increased the offense level by two because the offense involved more than minimal planning. See U.S.S.G. § 2F1.1(b)(2). The court also added two levels for obstruction of justice under § 3C1.1. See U.S.S.G. § 3C1.1. Finally, the court increased the offense level another three levels because the Government's "loss" exceeded $10,000. See U.S.S.G. § 2F1.1(b)(1)(D). In total, the court found Parsons' offense level was thirteen and her criminal history category was I, and sentenced her to thirteen months imprisonment.

The court concluded that Parsons' fraud caused a "loss" in excess of $10,000 to the United States based upon the sum of the total amount claimed on three expense reports: a report requesting $1,613 filed on January 11, 1993, a report requesting $1,749.87 filed on April 1, 1993, and a report requesting $7,022.01 filed on October 4, 1993. Portions of each report sought reimbursement for nonexistent expenses, but each report also included requests for legitimate expenses. The court noted that "a decision on either side of this issue [is] troubling," but held that if a portion of the report was fraudulent, the entire amount requested -- including expenses legitimately claimed -- constituted a "loss" to the Government. The court based this ruling on 28 U.S.C. § 2514 (1994), which provides that filing a fraudulent claim against the United States results in the forfeiture of the entire claim. Parsons objected to the loss calculation, and filed a timely appeal to this court.

II.

The sole question before us is whether the district court erred in determining the Government's "loss" under § 2F1.1. "We review de novo the district court's legal interpretation of the term `loss' under the Sentencing Guidelines, but `to the extent that the determination of the amount of loss is a factual matter, we review only for clear error.'" United States v. Castner, 50 F.3d 1267, 1274 (4th Cir. 1995) (quoting United States v. West, 2 F.3d 66, 71 (4th Cir. 1993)). In this case the facts are undisputed, and we consider a purely legal question: whether the entire amount of Parsons' claims -- or only the fraudulently claimed items -- should be counted as "loss" under the sentencing guidelines.

3

"[L]oss under § 2F1.1(b)(1) is the actual, probable, or intended loss to the victims." United States v. Marcus, 82 F.3d 606, 608 (4th Cir. 1996) (quoting United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995)). The loss itself (whether the actual or intended loss) is limited to the tangible economic loss of the victim. Lost potential interest on improperly taken funds, for example, is not counted as loss. See U.S.S.G. § 2F1.1 comment 7 (noting that "loss is the value of the money, property or services unlawfully taken; it does not, for example, include interest the victim could have earned").

Nor is loss typically measured by the gross amount involved in the fraudulent scheme. See United States v. Mount , 966 F.2d 262, 265 (7th Cir. 1992) (Section 2F1.1 "call[s] for the court to determine the net detriment to the victim rather than the gross amount of money that changes hands."). Rather, whatever value the victim received is set off against the entire amount paid in evaluating the loss. When an item's value is fraudulently inflated, loss is the amount the item was overvalued, not the entire amount paid: "Where, for example, a defendant fraudulently represents that stock is worth $40,000 and the stock is worth only $10,000, the loss is the amount by which the stock was overvalued (i.e., $30,000)." U.S.S.G.§ 2F1.1 comment 7(a). Similarly, "[i]n a case involving diversion of government program benefits, loss is the value of the benefits diverted from intended recipients or uses." U.S.S.G. § 2F1.1 comment 7(d). Loss is not the total amount of the benefits the defendant received, because some benefits may be rightfully due; instead, loss is measured by the amount diverted from proper purposes.

We have consistently followed this approach in determining the correct measure of loss for guidelines purposes. For example, in United States v. Adam, 70 F.3d 776 (4th Cir. 1995), and United States v. Castner, 50 F.3d 1267 (4th Cir. 1995), we found that the defendant's misconduct -- medicare fraud in Adam  and Naval procurement fraud in Castner -- caused a loss to the United States. We did not, however, count as a loss the entire amount paid for medicare treatments in Adam, or the entire contract amount in Castner. Rather, we used the profit made by each defendant as a proxy for the loss. Adam, 70 F.3d at 781-82; Castner, 50 F.3d 1276. We found the profit a fair estimation of loss because the Government did receive some benefit for the money paid to the defendants, but did not receive a benefit

4

for "the amount of money unlawfully taken -- the illegal profit." Castner, 50 F.3d at 1276.

We have even recognized that a victim of fraud who received full value for his money has suffered no loss. In United States v. Chatterji, 46 F.3d 1336 (4th Cir. 1995), the district court held that the gross sales of two prescription drugs ($13.4 million) was a loss to consumers because of false statements in an FDA application. Id. at 1339-40. We reversed, holding that despite the false statements "there was no loss to the consumers," because the drugs were "exactly what they purported to be: [drugs] approved by the FDA, manufactured in a certain strength and dosage, and producing the specified therapeutic benefits that FDA requirements were intended to ensure." Id. at 1341. Because the consumers had received what they bargained for, no loss resulted from the manufacturer's conduct.

The Sentencing Commission's instructions as to the proper calculations of loss and our reasoning in Adam, Castner, and Chatterji make clear that Parsons' sentence was improperly calculated. The loss attributable to her should be limited to the "[p]ayment fraudulently obtained in excess of the amount to which [she was] lawfully entitled." Castner, 50 F.3d at 1276. Parsons did defraud the Government, but the Government suffered no "loss" of the money that Parsons was authorized to spend, and legitimately did spend, on moving expenses.

Nor does 28 U.S.C. § 2514 mandate a different result. That statute provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.
>
> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514 (1994). The district court reasoned that under § 2514 "once you submit a claim that is false, then the person who

submits that false claim forfeits the entire claim to the United States" and so the Government's loss must be the entire forfeited amount. For several reasons, we disagree with this rationale. First, even if § 2514 worked an automatic self-executing forfeiture, as the district court apparently believed, this does not mean that the amount forfeited by a defendant constitutes a loss to the Government for guidelines purposes. Forfeiture is a penalty imposed on a criminal independent of any loss to the crime victim. As Chief Judge Wilkinson recently explained, the "procedures for forfeiture are set forth in a comprehensive statutory framework of their own, one which is separate and apart from the sentencing guidelines." United States v. Weinberger, 91 F.3d 642, 644 (4th Cir. 1996).

Moreover, § 2514 is not self-executing, i.e. the statute does not work a forfeiture immediately upon the submission of a false claim. Instead, the statute requires that "[i]n such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture." 28 U.S.C.§ 2514 (1994). As such, the district court was incorrect that the moment Parsons filed partially fraudulent expense reports the entire claim was forfeited. Section § 2514 requires separate court proceedings to work a forfeiture.

The effect of § 2514 upon the loss calculation is thus similar to the operation of the FDA regulations at issue in Chatterji, 46 F.3d 1336 at 1340-41. The Government argued there that materially false statements on an application for drug approval made the resulting FDA approval "void ab initio," and therefore meant the drugs were not FDA approved and worthless to consumers. Id. at 1341. We rejected this argument because by statute the FDA could only "withdraw approval of an application" for material falsehoods "after due notice and opportunity for [a] hearing." Id.  The statutory requirement for a separate proceeding would have been unnecessary if the government was correct that "due to a materially false statement in the application, no valid approval had ever been given." Id.  Just as in Chatterji where the FDA's approval was not automatically revoked on the basis of a false statement, here an entire travel reimbursement claim was not automatically forfeited because it was partially fraudulent.

Furthermore, the Government has not cited, and we have not found, any case where 28 U.S.C. § 2514 has been used in conjunction

6

with § 2F1.1 to determine the proper sentence for violations of 18 U.S.C. § 287. This is a telling lack of authority, because § 287 punishes criminally the same conduct that triggers civil forfeiture under § 2514: the filing of false claims against the Government. If the Government were correct that § 2514 causes an immediate forfeiture, and that this forfeiture correctly measures loss, then virtually every violation of § 287 would result in forfeiture and the entire amount involved would always count as the loss under § 2F1.1.

No court has reached this result. In fact, in sentencing violators of § 287, courts have unanimously focused upon the actual loss caused and not the entire amount involved. See, e.g. , United States v. Leahy, 82 F.3d 624, 638 (5th Cir. 1996) (defendant convicted under 18 U.S.C. § 287, and loss for purposes of § 2F1.1 is the actual loss); United States v. Abud-Sanchez, 973 F.2d 835, 837-40 (10th Cir. 1992) (same); United States v. Rayborn, 957 F.2d 841, 842-44 (11th Cir. 1992) (same); United States v. Haddon, 927 F.2d 942, 951 (7th Cir. 1991) (defendant convicted under § 287 and sentenced under § 2F1.1, which "directs the sentencing court to use the amount of the `loss' (not necessarily the amount of the fraud) in computing the base offense level").

Similarly, although there are no reported decisions from this circuit calculating loss for a § 287 violation, we have never utilized § 2514 to determine loss for other cases involving fraudulent claims against the United States. See, e.g., Adam, 70 F.3d at 781-82 (defendant convicted of filing fraudulent medicare claims); Castner, 50 F.3d at 1274-77 (defendant convicted of defrauding the Navy).

For all of these reasons, we conclude that only the amounts Parsons fraudulently claimed were a loss to the Government under § 2F1.1. Thus, the district court erred in calculating the Government's loss by including amounts Parsons had rightfully claimed.

III.

The sentence is vacated and the case is remanded for resentencing.

VACATED AND REMANDED

7