**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 01-4638

WILLIAM MURRAY,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-00-317-PJM)

Argued: June 4, 2002

Decided: July 12, 2002

Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

Vacated and remanded by unpublished opinion. Judge Traxler wrote
the majority opinion, in which Judge Michael joined. Judge Niemeyer
wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Ronald Barry Rubin, RUBIN & RUBIN, CHARTERED,
Rockville, Maryland, for Appellant. Sandra Wilkinson, Assistant
United States Attorney, UNITED STATES ATTORNEY'S OFFICE,
Greenbelt, Maryland, for Appellee. **ON BRIEF:** Michael A.
Stodghill, RUBIN & RUBIN, CHARTERED, Rockville, Maryland,
for Appellant. Thomas M. DiBiagio, United States Attorney,

UNITED STATES ATTORNEY'S OFFICE, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

TRAXLER, Circuit Judge:

William Murray defrauded Brethren Mutual Insurance Company ("BMI") out of a substantial sum of money by misrepresenting both the original costs involved in constructing a facility for one of BMI's insureds and the costs of rebuilding the facility after it was partially destroyed by fire. Pursuant to a plea agreement, Murray pled guilty to two counts of mail fraud, *see* 18 U.S.C.A. § 1341 (West 2000), and the remaining counts of the multi-count indictment against him were dismissed. The parties left the question of the proper amount of restitution to be determined at sentencing. Prior to sentencing, the parties agreed on the actual replacement cost of the building and agreed that the restitution award should include the amount by which the costs of the project had been fraudulently inflated. They disagreed, however, about whether the restitution amount should include profits and overhead to which Murray would have been entitled based on the actual replacement cost. Stated differently, the question at sentencing was whether Murray was entitled to keep the profits and overhead from the job that were legitimate under the contractual formula for calculating those figures, or whether he should be required to refund those to BMI, the victim of the fraud. The district court held that Murray must refund those amounts, and Murray appeals. We vacate and remand.

I.

On appeal, Murray continues to press his argument that the profits and overhead from the project, once properly adjusted to account for the fraud, should not be counted as loss to BMI.[1] Because this issue

---

[1]Murray may raise this issue on appeal notwithstanding the provision in his plea agreement waiving his right to appeal. *See United States v.*

involves the district court's application of the guidelines to undisputed facts, we review the court's determination *de novo*. *See United States v. Parsons*, 109 F.3d 1002, 1004 (4th Cir. 1997) (observing that the issue of what amounts are properly counted as "loss" is "a purely legal question"); *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989) (stating that legal issues involving the interpretation and application of the sentencing guidelines are reviewed *de novo*).

Murray argues that the disposition of this appeal is squarely controlled by our prior decisions in *United States v. Parsons*, 109 F.3d 1002 (4th Cir. 1997), and *United States v. Dawkins*, 202 F.3d 711 (4th Cir. 2000). In *Parsons*, the defendant had been a postal service employee and had received a job transfer that required her to change geographic locations. The government agreed to pay the expenses of the move upon the filing of travel vouchers. Parsons listed false expenses on her vouchers and was convicted on multiple counts related to this misconduct. For purposes of determining Parsons' offense level, the district court concluded that the entire amount of expenses claimed should be counted as loss. This court reversed, holding that "[w]hen an item's value is fraudulently inflated, loss is the amount the item was overvalued, not the entire amount paid." *Parsons*, 109 F.3d at 1004.

In *Dawkins*, the defendant, another postal service employee, was convicted of two counts of making a false statement to obtain federal employees' disability benefits. The district court concluded that the loss for purposes of determining Dawkins' offense level was the full amount of benefits Dawkins had received during the two periods covered by the two forms he was convicted of falsifying, and the court ordered restitution in the full amount of the loss. Citing *Parsons*, we reversed, instructing the district court on remand to "consider loss as the difference between the amount of benefits Dawkins actually received and the amount he would have received had he truthfully and accurately completed the [disability] forms." *Dawkins*, 202 F.3d at 715.

---

*Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) ("[A]ppeals challenging the legality of restitution orders are . . . outside the scope of a defendant's otherwise valid appeal waiver.").

We agree with Murray that *Dawkins* and *Parsons* require a recalculation of the restitution award in this case. It is undisputed that the insurance policy provided for the replacement costs of the building. It is also undisputed that as a matter of industry custom, replacement costs include the profits and overhead of the contractor that rebuilds the facility. Edward Kopper, a property claims manager for BMI and its representative at the sentencing hearing, testified that the company usually allows some amount for overhead and profit and that those figures are set by industry standard. Furthermore, the government conceded below that there was a contractual provision providing for overhead and profit. Thus, under *Dawkins* and *Parsons*, the amount of loss is the difference between the amount BMI actually paid and the amount it would have paid had Murray submitted truthful and accurate invoices. The latter amount would have undeniably included Murray's overhead and profits.

The government argues, however, that BMI was not obligated to pay anything under the policy, and thus it was appropriate for the district court to order Murray to relinquish his overhead and profits. To understand this argument, it is necessary for us to introduce a few new facts and a new player, Larry Miller. Shortly after the fire partially destroyed the original building, Murray contacted Miller, who had been a friend of Murray's for some time and who had also been a high-level executive in the insurance industry. Murray asked Miller to be a liaison between S&K (the insured) and BMI. Miller agreed to act on S&K's behalf. He also agreed to help Murray effect his fraudulent scheme. Thus, Miller, while acting as S&K's representative, was aware of and participated in the fraud. A provision in the insurance contract declared that the policy was "void in any case of fraud . . . as it relates to this Coverage Part at any time." J.A. 70. The government argues that because Miller was the insured's agent, Miller's fraud was chargeable to the insured and the policy was therefore voided. Because the policy was allegedly void, the government contends BMI was not obligated to pay anything, and, accordingly, the district court could properly order restitution in any amount up to and including the full amount BMI paid out.

We cannot accept this argument. Whether and to what extent insurance contracts are void or voidable is often a complex issue. It is enough for present purposes for us to observe that BMI has never

taken the position that its loss was the full amount it paid on the insured's claim. In fact, prior to the sentencing hearing, the company filed an Amended Declaration of Victim Losses declaring that "the company is entitled to restitution in the total amount of $660,937.87." J.A. 47. Critically, in explaining how it arrived at this amount, BMI explained that it "paid $1,774,392.05 . . . for reconstruction of the building, when the actual cost of reconstruction was $1,113,454.18. No more than the actual cost was recoverable *under the [BMI] policy*." J.A. 47 (emphasis added). Thus, not only has the company itself never sought to avoid the policy, but in determining its losses it explicitly indicated that its calculations were premised on an effective policy. Indeed, BMI has not sought to recover the other roughly $1.1 million that it paid pursuant to the claim, and the government's argument that BMI has chosen not to pursue that amount as a gratuitous gesture to S&K is not at all persuasive. Nor is that argument supported by the record. As already noted, BMI paid the claim because it thought itself obligated to do so "under the [BMI] policy." J.A. 47.

## II.

In sum, this case is controlled by *Parsons* and *Dawkins*. Under the sound reasoning of those cases, the amount of loss for restitution purposes in a fraud case is the amount the victim would not have paid but for the fraud. Once we eliminate the fraud from this case, we are left with a contract that requires BMI to pay actual replacement costs, which includes some measure of profit and overhead. Accordingly, we vacate the restitution award and remand to the district court for further proceedings consistent with this opinion.[2]

---

[2]Murray also contends that the district court failed to make adequate factual findings to support the restitution award. To the extent that this challenge is meant to address Murray's ability to pay restitution, we believe counsel's statements at sentencing by which he expressly indicated that Murray was able to pay restitution provided a sufficient basis upon which to order restitution. To the extent that the challenge is to the district court's failure to key the monthly payment schedule to Murray's ability to pay, we need not address it. Because we vacate and remand for imposition of a lower amount of restitution, the district court may reconsider the monthly payment schedule. We have no reason to doubt that the district court is aware of its duty to make factual findings and will comply with its obligations.

*VACATED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Because the profit and overhead would benefit the defendant and reward him for the fraudulent scheme, of which he was the architect, I agree with the district court and would affirm.