**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DAVID J. MERRITT,
           *Defendant-Appellant.*

No. 02-7206

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DAVID J. MERRITT,
           *Defendant-Appellant.*

No. 02-7207

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DAVID J. MERRITT,
           *Defendant-Appellant.*

No. 02-7208

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

DAVID J. MERRITT,
           *Defendant-Appellant.*

No. 02-7209

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-98-06; CA-01-15; CR-97-43; CA-01-16)

Argued: May 6, 2004

Decided: June 25, 2004

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion. Judge Niemeyer wrote
a separate concurring opinion.

---

**COUNSEL**

**ARGUED:** Derek Sterling Bentsen, Third Year Law Student, Appel-
late Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF
LAW, Charlottesville, Virginia, for Appellant. Michael R. Smythers,
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:**
Neal L. Walters, Charlottesville, Virginia, for Appellant. Paul J.
McNulty, United States Attorney, Michael J. Elston, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

   A jury in the United States District Court for the Eastern District
of Virginia convicted David Merritt on seventy-six counts of an

indictment for offenses including mail fraud, false statements in a bankruptcy proceeding and fraudulent transfer of bankruptcy assets. Thereafter, Merritt waived indictment and venue and pled guilty to six new counts, including mail fraud and false statements to a financial institution, arising from illegal acts committed in the Middle District of Florida. The two cases were consolidated for sentencing and the district court imposed a 140-month term of imprisonment and ordered Merritt to pay restitution. On direct review, we affirmed Merritt's conviction and sentence. *See United States v. Merritt*, 205 F.3d 1335 (table), 2000 WL 148214 (4th Cir. 2000) (per curiam) (unpublished).

Merritt moved for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. In his motion, Merritt asserted that (1) he was improperly sentenced on inaccurate information; (2) he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (3) the government engaged in prosecutorial misconduct based on misrepresentations it made at sentencing; (4) the government engaged in prosecutorial misconduct by moving for an upward departure; (5) he received ineffective assistance of counsel both during plea negotiations and sentencing; (6) the government engaged in prosecutorial misconduct in informing him of his sentencing exposure; and (7) the court violated Fed. R. Crim. P. 11(e). The district court dismissed the first four claims as procedurally defaulted, and denied relief on the merits of each remaining claim. On appeal, we granted Merritt two certificates of appealability — one based on his ineffective assistance of counsel during plea negotiations before trial; the other based on ineffective assistance of counsel at sentencing — but dismissed the remaining claims. Having now considered the ineffective assistance of counsel claims on the merits, we find that they fail for the reasons that follow.

## I.

In July 1997, Merritt was indicted on seventy-seven counts including mail fraud, making false statements during a bankruptcy proceeding and fraudulent transfer of assets. Prior to trial, Merritt's attorney and the government settled on a plea agreement whereby Merritt would plead guilty to three counts and receive a specific sentence, pursuant to Fed. R. Crim. P. 11(e)(1)(C) (1997),[1] of eighteen months'

---

[1]After reorganization of Rule 11, the provision's current form is Fed. R. Crim. P. 11(c)(1)(C).

imprisonment. In deciding whether to accept the plea offer, Merritt asserts that his counsel (hereinafter "trial counsel") informed him that he would face a forty-one month sentence if convicted on the indictment. Purportedly relying on this information, Merritt maintains he rejected the government's plea offer and decided to go to trial.

At trial, in December 1997, the jury convicted Merritt of seventy-six of the seventy-seven counts upon which he was indicted.[2] The initial Presentence Report ("PSR"), which was amended several times prior to sentencing, calculated a sentencing range of 41-51 months under the United States Sentencing Guidelines. On March 9, 1998, Merritt's probation officer amended the PSR based on new information and calculated a sentencing range of 97-121 months.

On March 10, 1998, the day that sentencing was to take place, Merritt waived venue and pled guilty to a new six count criminal information based on separate fraudulent conduct that occurred in the Middle District of Florida. In the plea agreement, Merritt agreed to waive his right to appeal his sentence on both the original seventy-six and the six new counts. After entering the plea agreement, the district court consolidated the cases for sentencing. Prior to the sentencing hearing, the government moved for an upward departure based on aggravating circumstances.

Meanwhile, during his review of the original PSR, Merritt allegedly discovered several factual inconsistencies. Specifically, Merritt noticed the PSR's "Victim Impact" section stated that his scheme defrauded victims of $1,742,233.38, but acknowledged that "some of the victims have received some funds through the bankruptcy process," thus leaving $1,369,625.90 attributed to Merritt as actual loss for the purpose of restitution. Of this actual loss, Merritt asserted there were inaccuracies which led to an overstatement of approximately $480,000. Merritt sent four letters to trial counsel prior to sentencing regarding these inaccuracies, directed trial counsel to relevant witnesses who could attest to the errors, and requested a meeting to discuss these matters further. Trial counsel, however, never responded to the letters. Instead, trial counsel subpoenaed some of the identified witnesses, although he declined to have them testify at Merritt's sen-

---

[2]The government dismissed the other count.

tencing hearing. Merritt alleges that on the morning of April 29, 1998, the day of sentencing, trial counsel told him "not to worry, I have your objections covered." At the sentencing hearing, however, trial counsel did not object to the actual loss amounts calculated in the PSR; instead, he conceded that they were correct. At the conclusion of the sentencing hearing, the district court imposed a 140-months term of imprisonment and ordered restitution.

On direct appeal, we affirmed Merritt's conviction and sentence. *Merritt*, 2000 WL 148214, at *3. Merritt filed a motion pursuant to 28 U.S.C. § 2255, and the district court denied all claims for relief. This appeal ensued, and, as noted above, we granted certificates of appealability on Merritt's two ineffective assistance of counsel claims while dismissing his remaining claims.

## II.

We analyze Merritt's ineffectiveness of counsel claims under the familiar test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[3] To prevail, Merritt must show (1) "counsel's performance fell below an objective standard of reasonableness," as determined by comparison to "prevailing professional norms," *id.* at 688,

---

[3]In its brief, the government argued that we should dismiss the case because Merritt waived his right to appeal. Following our grant of certificates of appealability on the ineffective assistance of counsel claims, the government did not raise the waiver argument at oral argument. Regardless, we find the government's waiver arguments are without merit. While Merritt waived his right to challenge sentence, he did not waive his right to pursue his ineffective assistance of counsel claims or other issues on collateral review. We noted as much on direct review, finding that Merritt knowingly and intelligently "waived the right to contest his sentence so long as it was within the statutory maximum," *Merritt*, 2000 WL 148214, at *2, while recognizing "Merritt's waiver should not be extended past sentencing issues. Merritt did not expressly waive the right to appeal non-sentencing issues arising out of the jury verdict in either his plea agreement or the plea hearing." *Id.*; *see also* Dist. Ct. slip op. at 4 (noting that Merritt did not waive his right to collateral attacks). Merritt's § 2255 claims do not directly contest the propriety of his sentence, rather they challenge his counsel's efficacy during plea negotiations and at sentencing. Accordingly, they are not barred by his plea agreement.

and (2) he was prejudiced by his attorney's deficient conduct, *i.e.*, but for the errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 694.

Merritt asserts that his trial counsel was ineffective when providing him pre-trial advice during plea negotiations regarding his potential sentencing exposure if he was found guilty at trial. Merritt also argues that his trial counsel was ineffective because counsel failed to object to the actual loss amounts detailed in the PSR, which the district court used in determining sentence. With regard to the first claim, we find that Merritt has failed to demonstrate that trial counsel's performance fell below an objective standard of reasonableness. With regard to the second claim, we conclude that Merritt is unable to demonstrate prejudice, thus we need not decide whether his counsel's performance was, in fact, deficient.

## III.

Merritt first asserts his counsel was ineffective because on or around November 3, 1997, after Merritt had been offered a plea agreement specifying an eighteen-month term of imprisonment, trial counsel allegedly advised Merritt that his "maximum sentence exposure" would be forty-one months' imprisonment if he proceeded to trial and was found guilty. In a sworn affidavit, which was presented to the district court, Merritt alleged that while he was present, his trial counsel phoned the Assistant United States Attorney ("AUSA") handling the case, and the AUSA, who was on speaker phone, informed them that Merritt would face forty-one months if convicted. Merritt further claimed that when the call ended, trial counsel told him "you heard it from [the AUSA] that if you go to trial and loose [sic], you are looking at 41 months." The government flatly denies that this alleged conversation occurred.

Nonetheless, Merritt admits that after the alleged phone call ended, trial counsel recommended that he take the plea. Failing to take trial counsel's advice, Merritt rejected the plea after weighing the 41-month sentence he allegedly was informed he would receive if found guilty at trial against the 18 months' imprisonment specified in the plea agreement. Merritt asserts, through his affidavit, that had he

known his sentencing exposure was the 140 months to which he was sentenced, he would have accepted the plea.

To succeed on an ineffective assistance of counsel claim in the plea context, the Supreme Court has stated that the movant must show that his counsel's performance was deficient and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992). Thus, the prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Courts have since applied the *Strickland*/*Hill* test in cases where, as here, the opposite situation than that in *Hill* is at issue, *i.e.*, ineffective assistance allegedly caused the defendant to *reject* a plea agreement and proceed to trial. *See Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001) (requiring that movant show deficient performance and that, but for counsel's advice, he would have pled guilty); *United States v. Gordon*, 156 F.3d 376, 379-81 (2d Cir. 1998) (per curiam) (recognizing ineffective assistance claim where counsel's gross misadvice regarding potential sentencing exposure caused defendant to reject plea offer); *United States v. Day*, 969 F.2d 39, 42-43 (3d Cir. 1992) (same).

Accordingly, our inquiry requires a determination of whether Merritt has shown that his trial counsel provided him gross misadvice regarding his sentencing exposure, and, if so, whether but for this gross misadvice, there is a reasonable probability that Merritt would have accepted the plea agreement specifying a sentence of eighteen-months' imprisonment. In conducting this inquiry, we first recognize that there is some disagreement within the circuits as to whether objective evidence, in addition to the defendant's statement, is required to establish an ineffective assistance of counsel claim in this context. *Compare Magana*, 263 F.3d at 547 n.1 (suggesting there is no need for additional evidence so long as defendant shows "reasonable probability" of a different outcome), *and Gordon*, 156 F.3d at 381 (holding that sentencing "disparity provides sufficient objective evidence — when combined with a petitioner's statement concerning his intentions — to support a finding of prejudice under *Strickland*"), *with Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (find-

ing awareness of plea offer and after-the-fact testimony concerning desire to plea insufficient), *and Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986) (expressing doubt as to whether defendant's self-serving, post-conviction testimony regarding his intent as to plea offer would be sufficient, by itself, to establish the "reasonable probability" that defendant would have accepted the plea). In dismissing Merritt's claim, the district court appeared to adopt the reasoning of the latter line of cases, because in holding that Merritt failed to make an initial showing of misadvice, it stated "only [Merritt's] *post hoc* bald assertion exists to prove that he would have accepted the initial 18-month plea, which the Court finds insufficient to establish prejudice."[4]

Ultimately, we find it unnecessary to resolve what type of evidence is needed to establish an ineffective assistance of counsel claim in this context because, even if we were to adopt the line of cases supporting the proposition that a "*post hoc* assertion" by defendant is sufficient to support such a claim, Merritt nonetheless fails to establish ineffective assistance. In evaluating the effectiveness of trial counsel's advice regarding the desirability of the plea bargain and attendant sentence exposure, we agree with the Third Circuit's statement that although it is difficult to "state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure . . . . we can say, however, that familiarity with the structure and basic content of the Guidelines . . . has become a necessity for counsel who seek to give effective representation." *Day*, 969 F.2d at 43.

In this case, however, even assuming *arguendo* that Merritt's allegations concerning trial counsel's advice as to sentencing exposure are true, we conclude that trial counsel demonstrated familiarity with the structure and content of the Sentencing Guidelines as they applied in Merritt's case. Merritt claims that during the alleged speaker phone call with the AUSA, the AUSA told them "that [Merritt] would receive a 41 month sentence, based on 18 points from loss of $1.5

---

[4]Merritt also supported his claim with sworn affidavits from friends and family who attest that Merritt was weighing an eighteen-month plea agreement against a forty-one month maximum exposure if found guilty at trial. *See* App. to Request for COA, Ex. G-2.

million, 2 points for minimal planning, and 2 points for obstruction of justice, for a sentencing guideline level of 22." Indeed, after Merritt was convicted on seventy-six counts of the original indictment, the initial PSR, dated January 30, 1998, calculated a base offense level of 6 for the various fraudulent offenses, U.S.S.G. § 2F1.1(a) (1997), a 12-level enhancement for a loss of greater than $1.5 million, *id.* § 2F1.1(b)(1)(M), a 2-level enhancement for more than minimal planning, *id.* § 2F1.1(b)(2)(A)(B), and a 2-level enhancement for obstruction of justice, *id.* § 3C1.1, thus yielding an adjusted offense level of 22 with a guideline range of 41-51 months based on Merritt's criminal history category I — *i.e.*, *precisely* the calculations about which Merritt admits he was advised.

The 140-month sentence eventually imposed, about whose possibility Merritt complains he was not properly informed, stemmed from events which occurred *after* trial, and thus well after the alleged discussion regarding sentencing exposure in November of 1997. First, on February 23, 1998, the district court revoked Merritt's release bond as his illicit activities in Florida came to light, and the court found that Merritt had misled it. Accordingly, on March 3, 1998, a new PSR was prepared that listed, for the first time, a host of related criminal conduct in Florida, *e.g.*, using false identification, including a fraudulent Social Security number and fictitious business information to obtain loans and lines of credit. The revised PSR added a 2-level enhancement for obstruction of justice, U.S.S.G. § 2F1.1(b)(3)(B) (1997), and a 2-level enhancement for abuse of a position of trust, *id.* § 3B1.3, increasing Merritt's offense level to 26 with a guideline range of 63-78 months. On March 9, 1998, the probation office learned of an additional 4-level enhancement — which had been overlooked by the probation officer — based on the fact that Merritt's offenses affected a financial institution and he derived more than $1 million in gross receipts from the offenses. *See id.* § 2F1.1(b)(6)(B). Thus, Merritt's adjusted offense level was 30 and the attendant guideline range was 97-121 months.[5]

---

[5]At the sentencing hearing, the district court found the enhancement for abuse of a position of trust, U.S.S.G. § 3B1.3 (1997), did not apply. However, the court departed upward by five levels based on guideline factors that are present in the instant offense, but to an exceptional degree and based upon factors not mentioned by the guidelines. *See id.* § 5K2.0; *see also infra* at 14. Thus, Merritt was sentenced using an offense level of 33 with a guideline range of 135-168 months.

In this light, even assuming *arguendo* that Merritt's version of events is correct, it is apparent that at the time of plea negotiations, trial counsel had a reasonable basis for his advice to Merritt regarding sentencing exposure. Accordingly, Merritt has failed to demonstrate that trial counsel was objectively ineffective because he cannot show trial counsel's advice regarding sentencing exposure fell outside the range of "prevailing professional norms."

IV.

Merritt further alleges that his trial counsel was ineffective under *Strickland* because, at sentencing, he failed to object to or correct alleged factual inaccuracies in the PSR. As detailed above, Merritt's offenses yielded a base offense level of 6 pursuant to U.S.S.G. § 2F1.1(a) (1997), which governs crimes involving fraud and deceit. That base level is subject to enhancement based on the amount of loss caused by fraud. *See* U.S.S.G. § 2F1.1 (1997). An 11-level enhancement is warranted for a loss between $800,000 and $1,500,000, *id.* § 2F1.1(b)(1)(L), and a 12-level enhancement applies if the loss is between $1,500,000 and $2,000,000, *id.* § 2F1.1(b)(1)(M). The PSR stated that the gross, or intended, amount of fraud was $1,742,233.38, but that some of the victims had been repaid through the bankruptcy process, resulting in an actual loss of $1,369,625.90 (eventually, the probation officer added $187,455.38 to this sum consisting of various unsecured debts arising from the Florida offenses).

Merritt contends that of the actual loss amount, the PSR erroneously listed amounts due to approximately fifteen of ninety total victims which had, in fact, been settled. Between the time that Merritt entered his plea on March 10, 1998 and his sentencing hearing on April 29, 1998, he sent trial counsel a series of letters concerning these inaccuracies, requested that trial counsel move for an amendment to the PSR, and requested that they meet. In the letters, Merritt itemized the errors and the reasons therefore, and pointed to a cumulative overstatement of approximately $480,000; Merritt also provided his trial counsel with the contact information for his bankruptcy attorneys who could attest that the amounts had been satisfied.[6] Trial

---

[6]In support of his § 2255 claim, Merritt offers his affidavits outlining errors in the PSR, affidavits from his bankruptcy attorneys who swear that certain debts in the PSR had been satisfied by collateral, and the letters which Merritt sent to trial counsel concerning the errors.

counsel did not respond to these letters, nor did he meet with Merritt until the morning of sentencing when trial counsel stated that he had his client's objections covered. At sentencing, however, trial counsel did not raise the suggested objections, but instead conceded that the actual loss amounts were correct.

In rejecting this ineffective assistance of counsel claim, the district court stated that based on "the Court's recollection of events," trial counsel's performance constituted a "vigorous defense at sentencing that was entirely in line with accepted standards of performance." Dist. Ct. slip op. at 11. On appeal, Merritt stresses that while his trial counsel was generally well-prepared for the legal arguments at sentencing, his failure to object to the actual loss amounts was nonetheless ineffective. We need not, however, reach the first prong of the *Strickland* analysis, because it is clear that even if Merritt shows that it was objectively unreasonable for trial counsel not to object to the PSR's actual loss figure, Merritt cannot show prejudice. *See United States v. Terry*, 366 F.3d 312, 314 (4th Cir. 2004) (stating if petitioner "conclusively fails to demonstrate sufficient prejudice from certain acts or omissions, we need not decide whether counsel's performance in those regards was, in fact, deficient under *Strickland*" (citation omitted)).

At sentencing, the district judge and trial counsel discussed how Merritt's sentence could conceivably be calculated based on either actual or intended loss. Specifically, they discussed *United States v. Parsons*, 109 F.3d 1002, 1004-05 (4th Cir. 1997), and its examination of "tangible economic loss of the victim." In *Parsons*, we reviewed a postmaster's sentence on fraud convictions for filing partially fraudulent travel vouchers. In calculating sentence, the district court in *Parsons* concluded that the entire amount claimed in the vouchers — including both fraudulent and legitimate reimbursement requests — constituted a loss to the government. We reversed, stating: "The loss itself (whether the actual or intended loss) is limited to the tangible economic loss of the victim." *Id.* at 1004. Thus, we held that in sentencing the postmaster, the loss "should be limited to the payment fraudulently obtained in excess of the amount to which she was lawfully entitled." *Id.* at 1005 (internal quotation marks, citation and alterations omitted).

*Parsons* did not, however, address the issue of whether "intended loss" or "actual loss" is properly employed for the purpose of determining sentence, rather we simply held that a district court could not calculate sums of which the victim was not unlawfully deprived as "loss." Regardless, Merritt's trial counsel urged the district court to use the victims' "tangible economic loss," *i.e.*, "actual loss," in determining sentence.[7] In sentencing Merritt, the district court did not resolve whether "intended loss" or "actual loss" governed, but held that under either calculus the loss exceeded $1.5 million. It reasoned that the $187,000 loss from the Florida conduct could be added to the $1.36 million in the victim impact section thereby producing a loss amount greater than $1.5 million. Despite Merritt's allegations that the PSR's actual loss figures were in error, his trial counsel conceded that there was more than $1.5 million in actual loss.[8]

Trial counsel's concession is of absolutely no moment, however, because the plain text of the sentencing guideline and our application of the guideline post-*Parsons* demonstrate that intended loss, not actual loss, is generally applicable in determining sentence. The guideline provides that if an intended loss can be determined and it

---

[7]At the time of Merritt's sentencing, our case law was somewhat ambiguous as to whether district courts were to apply actual or intended loss in such cases. At that point, we had not taken a position on the "economic reality doctrine," *i.e.*, the proposition that in fraud cases if possible loss is less than intended loss then possible loss governs. The Sixth and Tenth Circuits had repeatedly applied the doctrine. *See, e.g.*, *United States v. Fleming*, 128 F.3d 285, 288 (6th Cir. 1997); *United States v. Galbraith*, 20 F.3d 1054, 1059 (10th Cir. 1994). However, we explicitly rejected this doctrine in *United States v. Miller*, 316 F.3d 495, 501-02 (4th Cir. 2003) (stating "[t]he majority of circuits in more recent cases, however, have rejected this "economic reality" approach . . . . We adopt the majority approach, and hold as a matter of law that the Guidelines permit courts to use intended loss . . . even if this exceeds the amount of loss actually possible").

[8]*See* J.A. 21 (trial counsel stated "What the record reflects is that the government's own pleading is the [$]1.3 [million]. I accept that. . . . I am not going to challenge that at this point for the purposes of this objection."); *id.* at 23 (conceding that the additional $187,435.38 should be counted as relevant conduct, thus pushing the actual loss to a sum greater than $1.5 million).

exceeds the actual loss, the court should use the intended loss to calculate the defendant's offense level. *See* U.S.S.G. § 2F1.1, cmt. n.7 (1997). The guideline states:

> In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. *However, where the intended loss is greater than the actual loss, the intended loss is to be used.*

*Id.* § 2F1.1, cmt. n.7(b) (emphasis added). Accordingly, we have stated, "the Guidelines focus on intended loss, not actual loss," *United States v. Quinn*, 359 F.3d 666, 680 (4th Cir. 2004) (citing § 2F1.1), and held "the Guidelines permit courts to use intended loss in calculating a defendant's sentence, even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct." *Miller*, 316 F.3d at 502; *see also United States v. Shevi*, 345 F.3d 675, 678 (8th Cir. 2003) (stating loss under § 2F1.1 is the greater of that which defendant intended to inflict and the actual loss inflicted). The Tenth Circuit has remarked, "[t]he reason the intended loss figure is used, even if it is significantly greater than actual loss, is to measure the magnitude of the crime at the time it was committed. [citation] The fact that a victim has recovered part of its loss after discovery of a fraud does not diminish the defendant's culpability for purposes of sentencing." *United States v. Nichols*, 229 F.3d 975, 979 (10th Cir. 2000) (additional citations omitted). Similarly, we have reasoned that use of intended loss serves "an important principle underlying the Guidelines, namely matching punishment with culpability." *Miller*, 316 F.3d at 502-03.

Indeed, at oral argument, Merritt conceded that intended loss is the correct calculus for determining sentence, and should have applied in this instance. Nevertheless, Merritt argued that he can show prejudice based on the district court's 5-level upward departure. As discussed above, Merritt must prove that there is a reasonable probability that

the outcome of the proceeding would have been different but for his attorney's ineffectiveness. *See Strickland*, 466 U.S. at 694. Merritt argues that had his trial counsel corrected the actual loss amount, there is a "reasonable probability" that the district court would not have imposed the 5-level upward departure because the number of victims and amount of actual loss would have been reduced. We find Appellant's contention without merit.

The district court's upward departure was based on far more than simple numerical thresholds which Merritt's conduct exceeded. In departing upward, the district court found multiple encouraged factors that were present to an exceptional degree and removed the case from the Guidelines' heartland. The court recognized: (1) the number of victims defrauded in the case; (2) the continuing and unusual amount of obstruction of justice and false statements by Merritt, and "the potential for loss of confidence in public functions because of some of the activities"; (3) the amount of planning involved in committing the offenses; (4) the risk to victims and their solvency; (5) the interference with government functions; and (6) "the amount of criminal behavior that perhaps *is not reflected in the economic loss or harm* to the victims." J.A. 70-71 (emphasis added); *see also id.* at 72-80 (explicating the events supporting each of the six mentioned factors which led to the departure). The court concluded that departure was warranted on such factors "because all of them . . . are present to an exceptional degree." *Id.* at 80. Thus, even if the amount of total loss was diminished by approximately $480,000 and the total number of victims was seventy-five, not ninety, as Appellant argues, Merritt's offense would remain most exceptional. Therefore, we hold that Merritt cannot show a reasonable probability that the departure would have been different even if trial counsel had objected to the allegedly erroneous amounts and was successful in doing so.

V.

For the foregoing reasons, we conclude that Merritt's claims of ineffective assistance of counsel fail. Accordingly, we affirm the judgment of the district court denying relief under 28 U.S.C. § 2255.

*AFFIRMED*

NIEMEYER, Circuit Judge, concurring:

I am pleased to concur in the judgment.