**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-4947**

———————

UNITED STATES OF AMERICA,

            Plaintiff – Appellee,

      v.

ROGER VAN SANTVOORD CAMP,

            Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Terrence W. Boyle, District Judge.   (5:11-cr-00155-BO-1)

———————

Argued:  January 28, 2014               Decided:  April 15, 2014

———————

Before KING, SHEDD, and THACKER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED**: Jorgelina E. Araneda, ARANEDA LAW FIRM, Raleigh, North Carolina, for Appellant.   Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Yvonne V. Watford-McKinney, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Roger Van Santvoord Camp appeals his sentence on several grounds and requests a vacatur of his guilty plea. For the reasons set forth below, we affirm the district court.

Roger Van Santvoord Camp established Piedmont Center Investments, LLC (PCI) in 1999. He was solely responsible for running the company. Timothy Buckley, Camp's friend, was a passive investor in the business. In 2009, Camp sought to establish a bowling alley and family entertainment center. From July 2009 until December 2010, Camp secured or attempted to secure financing from four financial institutions through the fraudulent use of Buckley's personal identifying information. He also obtained additional financing from Buckley.

In 2009, Camp secured a $3.8 million dollar commercial mortgage from Key Source Bank. Camp falsely told the bank representatives that Buckley agreed to be a guarantor and provided the bank with a falsified financial statement, representing that it was prepared by Buckley, and a forged guaranty form. As a result of Camp's fraudulent representations, Key Source Bank disbursed the $3.8 million commercial mortgage to PCI.

Around this same time, Camp submitted a commercial loan application to Capital Bank for $2 million. This application also included falsified documents representing that Buckley had

2

agreed to personally guarantee the loan. Capital Bank ultimately disbursed the loan, and the bowling alley's equipment was pledged as collateral.

Camp also sought a personal loan from Buckley in order to cover some of the renovation costs for the bowling alley. Buckley loaned Camp $250,000, unaware that Camp had already received loans from Key Source and Capital Bank by falsely representing Buckley as the guarantor. The loan was secured by Camp's interest in PCI, which is currently in bankruptcy.

Camp continued to experience financial problems and thus applied to Trust Atlantic Bank for a $500,000 unsecured line of credit. Camp falsely told the bank that Buckley was going to co-sign this loan. However, Trust Atlantic ultimately did not approve the loan because Camp could not produce Buckley to personally meet with bank representatives.

Camp also received a $150,000 line of credit from North State Bank by fraudulently listing a fake brokerage account as proof of his assets. When the bank realized the fraud, it informed Camp he needed to immediately repay the $70,000 that Camp had already withdrawn. Camp then obtained a $125,000 personal loan from Buckley to repay North State and pocketed the additional $55,000. To obtain this personal loan, Camp lied to Buckley, telling him that the bank loan was for $200,000, that he had $75,000 to repay it, but that he needed another $125,000.

3

Camp's fraudulent scheme was eventually discovered, and he pled guilty to several counts of bank fraud and aggravated identity theft. Camp was sentenced to a total of 102 months imprisonment and $442,827.02 in restitution to Buckley. At sentencing, the judge applied an 18-level enhancement for the amount of loss exceeding $2.5 million. The judge also applied a 2-level enhancement for the use of sophisticated means. Camp timely appealed to this Court and makes several arguments regarding his sentencing and guilty plea.

First, Camp argues that the district court erred at sentencing when it applied an 18-level enhancement for the amount of loss exceeding $2.5 million, pursuant to USSG § 2B1.1(b)(1). Under the guidelines,

> loss is the greater of actual loss or intended loss. "Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense. "Intended loss" . . . means the pecuniary harm that was intended to result from the offense . . . . The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference. . . . In a case involving collateral pledged or otherwise provided by the defendant, [loss shall be reduced by] the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

4

USSG § 2B1.1.1(b)(1) cmt. We review a district court's factual finding of loss for clear error. See United States v. Parsons, 109 F.3d 1002, 1004 (4th Cir. 1997).

Here, considering only actual loss, there was loss exceeding $2.5 million. Key Source Bank loaned $3.8 million to Camp, but only received $1.5 million upon sale of the property after default. Thus, Key Source Bank suffered a loss of $2.3 million.

Buckley lost $250,000 in a personal loan to Camp, which Buckley made because he was unaware Camp had already obtained other financing for the project by fraudulently representing Buckley as a guarantor. Although this personal loan was backed by Camp's interest in PCI (which is now in bankruptcy), the district court, by awarding the full restitution amount requested for Buckley, implicitly found the PCI interest was worth only a nominal value. Further, Camp lied to Buckley in order to obtain an additional $125,000 loan from him, which Buckley also lost. Buckley also incurred $67,827.02 in legal fees as a result of the instant offense. In total, Buckley lost $442,827.02.

The district court did not clearly err in its finding of a $2.3 million dollar loss for Key Source Bank. That loss is clearly supported in the record. Further, the district court must only make a reasonable estimation of the loss. Thus, even

if the loss incurred by Buckley was only half of what the district court found when awarding restitution, it would still push the loss incurred over the $2.5 million threshold for the 18-level enhancement. Therefore, the district court's estimation that the loss exceeded $2.5 million was not clear error, and we affirm the 18-level enhancement.

Second, Camp argues the district court erred in applying a 2-level enhancement for the use of sophisticated means, pursuant to USSG § 2B1.1(b)(10)(c). "'Sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1(b)(10)(c) cmt. "We . . . review for clear error the district court's finding that [defendant] used sophisticated means." United States v. Noel, 502 F. App'x 284, 290 (4th Cir. 2012), cert. denied, 134 S. Ct. 366 (2013).

In the instant case, Camp used great effort to secure or attempt to secure loans from four financial institutions and Timothy Buckley. He forged assignment of guaranty forms; manipulated Timothy Buckley's financial statements; forged Buckley's signature, as well as the signatures of others; and engaged in extended negotiations with financial institutions based upon false information, among other things.

The district court's finding that Camp used sophisticated means is amply supported by the record, and thus the 2-level enhancement was appropriate.

Third, Camp argues that he received ineffective assistance of counsel because his defense lawyers did not pursue protection for him under the North Carolina business judgment rule. "A claim of ineffective assistance of counsel is normally considered on collateral review, not on direct appeal." United States v. Ford, 88 F.3d 1350, 1363 (4th Cir. 1996) (citing United States v. Grubb, 11 F.3d 426, 441 (4th Cir. 1993)). "For a claim of ineffective assistance of counsel to be heard on direct appeal, it must 'conclusively appear[ ] in the trial record itself that the defendant was not provided with effective representation.'" United States v. Hoyle, 33 F.3d 415, 418 (4th Cir. 1994) (quoting United States v. Hanley, 974 F.2d 14, 16 n. 2 (4th Cir. 1992)) (alteration in original).

> To prevail on an ineffective assistance of counsel claim in the context of a conviction following a guilty plea, [defendant] must show that defense counsel's representation fell below an objective standard of reasonableness pursuant to the prevailing professional norms, and that but for counsel's unprofessional errors he would not have pled guilty and would have insisted on going to trial.

McGraw v. United States, 106 F.3d 391 table, No. 96-6161, 1997 WL 34431, at *1 (4th Cir. 1997) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).

7

Here, it does not "conclusively appear in the trial record" that Camp received ineffective assistance of counsel. Camp does not even argue that he would not have pled guilty but for his defense attorneys' failure to pursue the business judgment rule defense; rather, he simply argues he was prejudiced by their failure to do so. The business judgment rule, however, does not protect against an individual's purposeful and fraudulent misconduct, but rather protects mere errors in judgment. See State ex rel. Long v. ILA Corp., 513 S.E.2d 812, 822 (N.C. Ct. App. 1999). Therefore, it does not "conclusively appear" on the record that Camp received ineffective assistance at trial.

Fourth, Camp argues that the district court wrongfully participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11. Because Camp did not object to this at trial, his Rule 11 claim is subject to plain error review. See United States v. Bradley, 455 F.3d 453, 461 (4th Cir. 2006). To show plain error, Camp

> must demonstrate that (1) the asserted violation of Rule 11(c)(1) is error, (2) the error is plain, and (3) the error affected [his] substantial rights; if these three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 731-32 (1993).

Bradley, 455 F.3d at 461.

8

Here, at the close of the prosecution's evidence, the district court stated,

> You never know what happens in court but perjury is a spector and obstruction of justice and whatever. I've tried a few cases and I can only remember one other one—I won't go into it—where something like the evidence that just came out came out.

J.A. 672.

This statement does not constitute a Rule 11(c) error. Even if these remarks were to be construed as a comment on plea negotiations, this Court has distinguished cases where judges have made "single brief remark[s] during negotiations" from those where judges have fully inserted themselves into the negotiations process. See Bradley, 455 F.3d at 462–63 (citing United States v. Bierd, 217 F.3d 15, 21 (1st Cir. 2000), for the proposition "that court's mention of a guilty plea and acceptance of responsibility to defense counsel was not reversible error" and citing United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996), for "finding no improper participation when the court warned the defendant of the risk involved in pleading guilty to the substantive offense and contesting the conspiracy charge").[1]

---

[1] In Bradley, this Court explained there was a Rule 11 error because:

> [t]he record clearly demonstrate[d] that the district court initiated plea discussions, advised the

(Continued)

Here, rather than involve itself in plea negotiations, the court simply warned Camp against committing perjury on the stand and did not mention pleading or the benefits of pleading versus continuing with trial. Additionally, rather than attempt to coerce Camp into pleading guilty during the trial, the court twice reminded Camp that he had already been at trial for several days and asked if he was sure he wanted to proceed with the guilty plea rather than continuing with the trial. J.A. 674–75. This record shows a single, brief remark warning against perjury, rather than judicial engagement in plea negotiations, and therefore, there is no Rule 11(c) error here, let alone a plain error.

---

Defendants that they might "be better off pleading to the indictment," suggested that they would likely receive life sentences if they went to trial, commented on the amount and weight of the Government's evidence, criticized the Defendants for turning down plea offers from the Government, urged the Defendants to attempt "to dispose of the charges against them on a reasonable basis," and explained to the Defendants that even if the prosecution would not recommend the sentence the Defendants desired, this should not prevent a plea because the court-not the prosecution-would determine the sentence.

Bradley, 455 F.3d at 462.

This extensive engagement in plea negotiations stands in stark contrast to the single remark made in this case regarding perjury.

10

Fifth, Camp argues that the district court improperly questioned witnesses at trial and that this resulted in a denial of due process for Camp. By pleading guilty, Camp has waived any argument regarding "nonjurisdictional defects" in the trial proceedings below. See United States v. Moussaoui, 591 F.3d 263, 280 (4th Cir. 2010) ("When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to the entry of the plea." (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004))). Therefore, his argument about judicial questioning of witnesses is waived.[2]

In conclusion, for the foregoing reasons, we refuse to vacate Camp's guilty plea, and we affirm the district court's sentence.

AFFIRMED

---

[2] Camp also raises an argument regarding his restitution to Buckley, which we find to be without merit.

11